## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RED HAWK FIRE & SECURITY, LLC,<br>As successor-in-interest to DIVERSIFIED<br>PROTECTION SYSTEMS, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>SIEMENS INDUSTRY, INC., a Delaware<br>corporation, and DOES 1 through 200, inclusive,<br><br>Defendants. | Civil Action No. 2:19-cv-13310-MCA-MAH<br><br>**Hon. Madeline Cox Arleo, U.S.D.J.**<br>**Hon. Michael A. Hammer, U.S.M.J.**<br><br><br>***Document Filed Electronically*** |

**BRIEF IN SUPPORT OF PLAINTIFF RED HAWK FIRE AND SECURITY, LLC's, AS SUCCESSOR IN INTEREST TO DIVERSIFIED PROTECTION SYSTEMS, LLC, OPPOSITION TO DEFENDANT SIEMENS INDUSTRY, INC.'S MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(6) AND F.R.C.P. 12(f)**

Timothy I. Duffy, Esq.
Michael A. Spizzuco, Jr., Esq.
**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Telephone: (973) 631-6002
Fax: (973) 267-6442
tduffy@coughlinduffy.com
mspizzuco@coughlinduffy.com

*1679684*

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES........................................................................................ iii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF MATERIAL FACTS ...................................................................... 2

LEGAL ARGUMENT ................................................................................................. 4

POINT I

DPSI HAS ALLEGED SUFFICIENT FACTS TO MAINTAIN
THE FIRST AMENDED COMPLAINT.................................................................. 4

A. Standard of Review ............................................................................................. 4

(i) F.R.C.P. 12(f) ............................................................................................ 6

B. Red Hawk Possesses Standing .......................................................................... 6

(i) Legal Standard ........................................................................................... 7

(ii) RH Possesses an Interest in the Distributorship
Agreements................................................................................................. 8

C. The Contractual Limitation of Liability Clauses Have no Bearing on
This Application ................................................................................................ 14

(i) Siemens Argues that the First Amended Complaint be Dismissed
because DPSI has not "Established" the Damages it Seeks.................... 14

(ii) The Limitation of Liability Clause is Ripe for Summary
Judgment, Not a Motion to Dismiss........................................................ 15

(iii) Even if the Limitation of Liability Issue is Ripe, the Clause
Which Siemens Relies Upon is Not Valid Under New
Jersey Law ............................................................................................... 15

D. The Breach of Contrsact Claim is Properly Alleged......................................19

E. The Economic Loss Doctrine Does Not Warrant Dismissal at
This Juncture ...............................................................................................21

    (i) Breach of Covenant Good Faith and Fair Dealing....................................22

    (ii) Unjust Enrichment....................................................................................22

    (iii) Fraud/Fradulent Misrepresentation .........................................................23

    (iv) Defamation ..............................................................................................25

F. Unjust Enrichment is Properly Alleged ........................................................25

G. Fraud/Fraudelent Misrepresentation is Properly Alleged ..............................26

H. Defamation is Properly Alleged ...................................................................30

I. Punitive Damages is Properly Request Relief................................................33

J. Jury Trial....................................................................................................34

POINT II

ALTERNATIVELY, IF THE COURT GRANTS ALL OR PART
OF SIMENS' MOTION, DPSI SHOULD BE PERMITTED
LEAVE TO AMEND THE FIRST AMENDED COMPAINT.........................34

CONCLUSION .......................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

66 VMD Assocs., LLC v. Melick-Tully & Assocs., P.C.,
    2011 N.J. Super. Unpub. ............................................................................................19

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) ..................................................................................................10

Angelastro v. Prudential-Bache Securities, Inc.,
    764 F.2d 939 (3d Cir. 1985) .......................................................................................5

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ...................................................................................................4

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007) ...................................................................................................4

Bethel v. Jendoco,
    570 F.2d 1168 (3d Cir. 1978) ...................................................................................30

Bistrian v. Levi,
    696 F.3d 352 (3d Cir. 2014) .......................................................................................6

Borelli v. City of Reading,
    532 F.2d 950 (3d. Cir. 1976) ....................................................................................35

Braunstein v. Benjamin Berman, Inc.,
    1990 U.S. Dist. LEXIS 20922, Civil Action No. 89-5344 (D.N.J., Sep. 14,
    1990) ........................................................................................................................27

In Re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir.1997) ......................................................................................5

Christidis v. First Pennsylvania Mortgage Trust,
    717 F.2d 96 (3d Cir. 1986) .......................................................................................28

Dando v. Bimbo Food Bakerites Distrib., LLC,
    2017 U.S. Dist. LEXIS 54327, Civil Action No.: 14-2956 .......................................21

Dello Russo v. Nagel,
    358 N.J. Super. 254 (App. Div. 2003) ......................................................................33

Doherty v. Hertz Corp.,
    2010 U.S. Dist. LEXIS 124714 (D.N.J., Nov. 24, 2010) ..........................................22

Dreimuller v. Rogow,
    93 N.J.L. ........................................................................................................34

F.D.I.C. v. Bathgate,
    27 F.3d 850 (3d Cir. 1994) .............................................................................33

FTC v. Hope Now Modifications, LLC,
    2011 U.S. Dist. LEXIS 24657, Civil Action No.: 09-1204 (D.N.J. Mar. 10,
    2011) .................................................................................................................6

Garlanger v. Verbeke,
    223 F. Supp. 2d 596 (D.N.J. 2002) ................................................................6

Gregory v. Gregory,
    2015 U.S. Dist. LEXIS 142736, Civil Action. No.: 15-00320 (D.N.J., Oct. 21,
    2015) ...............................................................................................................30

Gumbs v. O'Connor,
    2011 WL 1322238, No. 10–1520 (D.N.J. Apr. 4, 2011) ..............................33

Hancock Indus. v. Schaeffer,
    811 F.2d 225 (3d Cir. 1987) ..........................................................................10

Harding v. Kellam,
    1998 U.S. App. LEXIS 16307, Civil Action No.: No. 97-1360 (4th Cir., July
    15, 1998) ...........................................................................................................9

Knorr v. Smeal,
    178 N.J. 169, 836 A.2d 794 (2003) ...............................................................13

Kugler v. Romain,
    58 N.J. 522 (1971) ..........................................................................................15

Lucier v. Williams,
    366 N.J. Super. 485 (App. Div. 2004) ...........................................15, 16, 18, 19

Lum v. Bank of Am.,
    361 F.3d 217 (3d Cir. 2004) .............................................................................5

Mangan v. Corporate Synergies Group, Inc.,
    834 F. Supp. 2d 199 (D.N.J. 2011) ...............................................................30

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574 (1986) .......................................................................................10

Med-X Global, LLC v. Azimuth Risk Solutions, LLC,
    2018 U.S. Dist. LEXIS 144884, Civ Action No.: 17-13086 (D.N.J., Aug. 27,
    2018) .................................................................................................................7

iv

Mele v. Federal Reserve Bank of N.Y.,
    359 F.3d 251 (3d Cir. 2004)............................................................................5

Meyer v. Riegel Products Corp.,
    720 F.2d 303 (3d Cir. 1983)........................................................................10

Moriera Constr. Co., Inc. v. Moretrench Corp.,
    97 N.J. Super. 391 (App. Div. 1967), *aff'd* 51 N.J. 405 (1968).................15

Nappe v. Anschelewitz, Barr, Ansell & Bonello,
    97 N.J. 37 (1984) .......................................................................................34

Nix v. Welch & White, P.A.,
    55 Fed. Appx. 71 (3d. Cir. 2003)...............................................................35

Pennsylvania Coal Ass'n v. Babbitt,
    63 F.3d 231 (3d Cir. 1995)..........................................................................10

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008)..........................................................................5

Pinker v. Roche Holdings Ltd.,
    292 F.3d 361 (3d Cir. 2002)..........................................................................5

Ross Sys. v. Linden Dari-Delite, Inc.,
    35 N.J. 329 (1961) .....................................................................................10

Rudbart v. North Jersey District Water Supply Comm'n,
    127 N.J. 344, *cert. denied*, 506 U.S. 871 1992 .......................................15

San Pellegrino S.P.A. v. Aggressive Partnerships, Inc.,
    2009 U.S. Dist. LEXIS 69463, Civil Action No.: 08-6016 .........................5

Seville Indus. Machinery v. Southmost Machinery,
    742 F.2d 786 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985)...........27

Shane v. Fauver,
    213 F.3d 113 (3d. Cir. 2000)......................................................................35

Sprint Commc'ns Co. v. APCC Servs., Inc.,
    554 U.S. 269 (2008)......................................................................................7

Symbol Techs., Inc. v. Aruba Networks, Inc.,
    609 F. Supp. 2d 353 (D. Del. 2009)..............................................................6

Trainer v. Wolff,
    58 N.J.L. 381 (E. & A. 1895)......................................................................34

W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP,
    549 F.3d 100 (2d Cir. 2008)..........................................................................................7

West Penn Allegheny Health System, Inc. v. UPMC,
    627 F.3d. 85 (3d Cir. 2010)..........................................................................................5

Williams v. Borough of West Chester, Pa.,
    891 F.2d 458 (3d Cir. 1989)........................................................................................10

Zoneraich v. Overlook Hosp.,
    212 N.J. Super. 83 (App. Div. 1986) ..........................................................................33

**Other Authorities**

*Black's Law Dictionary* (7th ed. 1999).............................................................................18

California. ¶ *5,ECF Docket #29, Attachment #1* .............................................................2

Escondido Unified School District, SeaWorld San Diego, Rio Vista Tower, and
    City Front Terrace. ¶ *20, ECF Docket #29, Attachment #1*.......................................4

F.R.C.P. 8(d)(2) ...............................................................................................................21

F.R.C.P. 8(d)(3) ...............................................................................................................21

F.R.C.P. (9)(b) ...........................................................................................................27, 28

F.R.C.P. 12(b)(6) .......................................................................................................4, 8, 9

F.R.C.P. 12(f)....................................................................................................................6

F.R.C.P. 56.......................................................................................................1, 8, 9, 20

F.R.C.P. 56(c) ...................................................................................................................9

Mission Project. ¶ *15, ECF Docket #29, Attachment #1* ................................................3

Restatement (Second) of Contracts Section 241 (1981)..............................................10, 11

Rule 12(b)(6) and Rule 56 ................................................................................................9

Siemens. ¶ *10, ECF Docket #29, Attachment #1*.............................................................2

Siemens. ¶ *18, ECF Docket #29, Attachment #1* .............................................................3

United States Constitution Article III ..............................................................................7

## PRELIMINARY STATEMENT

The underlying action commenced by Diversified Protection Systems, LLC (hereinafter, "DPSI"), through its successor-in-interest Red Hawk Fire and Security, LLC (hereinafter, "RH"), is due to Defendant Siemens Industry, Inc.'s (hereinafter, "Siemens") wanton disregard of its contractual obligations to DPSI. In short, Siemens took advantage of a "cure" provision contained within a certain distributorship agreement entered into by and between DPSI and Siemens, only to later terminate said agreement and obtain, for itself, approximately $1,600,000.00 worth of business that was being pursued by DPSI. After the filing of the First Amended Complaint by DPSI, Siemens has filed the underlying Motion to Dismiss (the "Motion"), asserting meritless arguments that are better reserved for challenge under the purview of a F.R.C.P. 56 Motion for Summary Judgment. In its Motion, Siemens challenges every count of the First Amended Complaint, regardless of whether the argument is actually one for summary judgment, and asserts baseless and borderline frivolous arguments as to the validity of claims. Most egregiously, Siemens wholly ignores DPSI's ability to plead in the alternative, despite this Court's flexibility in allowing claimants to do so.

For all of the reasons asserted herein, Siemens' Motion to Dismiss the First Amended Complaint should be denied.

1

## STATEMENT OF MATERIAL FACTS

DPSI and Siemens entered into a series of written agreements whereby DPSI agreed to act as a distributor of Siemens' products through certain areas of the State of California. *¶ 5,ECF Docket #29, Attachment #1.* The last agreement executed between DPSI and Siemens was dated October 1, 2017 (the "Distributorship Agreement"). *¶ 6, ECF Docket #29, Attachment #1.* The Distributorship Agreement provided, in relevant part, that DPSI was required to meet certain purchasing requirements of Siemens' products. *¶ 7, ECF Docket #29, Attachment #1.* Specifically, DPSI's aggregate sales of Siemens' products was to exceed $100,000.00. *¶ 8, ECF Docket #29, Attachment #1.*

On February 7, 2018, Siemens issued a letter to DPSI indicating that DPSI's distributorship arrangement with Siemens would be terminated within thirty (30) days if DPSI did not cure alleged breaches of the Distributorship Agreement (the "February 7 Cure Letter"). *¶ 9, ECF Docket #29, Attachment #1; ECF Docket #31, Attachment 14.* Specifically, DPSI was alleged to have not met required purchase quotas from Siemens. *¶ 10, ECF Docket #29, Attachment #1.* Thereafter, DPSI undertook significant efforts to comply with Siemens' requests, and was, in fact, close in meeting Siemen's expectations. *¶ 11, ECF Docket #29, Attachment #1.* On March 9, 2018, within the time period specified by Siemens for DPSI to cure the alleged defects, Siemens sent a termination letter purporting to

2

terminate the Distributorship Agreement by and between the parties on a date certain (the "March 9 Termination Letter"). ¶ *12, ECF Docket #29, Attachment #1; ECF Docket #31, Attachment 15.*

Soon thereafter, it became clear that Siemens intended to undermine DPSI's efforts. ¶ *13, ECF Docket #29, Attachment #1.* By way of example, and by no means of limitation, Siemens sent a letter to all the general contractors bidding on the Escondido Union School District, Mission Middle School modernization project (the "Mission Project"), falsely alleging that DPSI would not be able to provide the materials required to perform the Mission Project as a potential subcontractor because Siemens was canceling DPSI's distributorship. ¶ *14, ECF Docket #29, Attachment #1.* Importantly, Siemens was the only other bidding entity as a subcontractor on the Mission Project. ¶ *15, ECF Docket #29, Attachment #1.* Not coincidently, Siemen's bid was significantly higher than the DPSI bid. ¶ *16, ECF Docket #29, Attachment #1.* Upon information and belief, the general contractor that prevailed upon the Mission Project bid, Barnhart-Reese Construction, would have selected DPSI as its subcontractor, rather than Siemens, had Siemens not sent the defamatory letter. ¶ *17, ECF Docket #29, Attachment #1.* Since that time, DPSI has learned that Siemens has contacted a large number of general contractors and DPSI's former and potential customers, apparently stating that DPSI has been terminated as a dealer of Siemens. ¶ *18, ECF Docket #29,*

3

*Attachment #1.* Upon information and belief, Siemens tortiously interfered with, at least, the following existing contracts of DPSI: Escondido Unified School District annual maintenance contract, SeaWorld San Diego maintenance contract, and Petco Park detector and devices upgrade. ¶ *19, ECF Docket #29, Attachment #1.* Moreover, upon information and belief, Siemens tortiously interfered with DPSI's reasonable expectation of obtaining additional work from DPSI's existing customers, including, but not limited to, additional projects from the Escondido Unified School District, SeaWorld San Diego, Rio Vista Tower, and City Front Terrace. ¶ *20, ECF Docket #29, Attachment #1.*

## LEGAL ARGUMENT

Point One

## DPSI HAS ALLEGED SUFFICIENT FACTS TO MAINTAIN THE FIRST AMENDED COMPLAINT

### A.    Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to "state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009), *quoting* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Twombly, 550 U.S. at 556. In reviewing a motion to dismiss pursuant to F.R.C.P. 12(b)(6), "the Court must

4

'accept all factual allegations as true and construe the complaint in the light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), *quoting* Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n. 7 (3d Cir. 2002). "[J]udging the sufficiency of a pleading is a context-dependent exercise" as "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d. 85, 98 (3d Cir. 2010). In determining factual sufficiency, a court may consider allegations contained within the complaint and the exhibits attached thereto, information available via public record, and documents forming the basis of a claim. Lum v. Bank of Am., 361 F.3d 217, 222 n. 3 (3d Cir. 2004). To that end, generally, a District Court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. San Pellegrino S.P.A. v. Aggressive Partnerships, Inc., 2009 U.S. Dist. LEXIS 69463, Civil Action No.: 08-6016 RBK-AMD, (D.N.J. Aug. 10, 2009), *citing* In Re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997); Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985) There are, however, limited exceptions to this rule. In addition to the foregoing, documents integral to the allegations raised in the complaint are ripe for consideration by a court. Mele v. Federal Reserve Bank of N.Y., 359 F.3d 251, 255 n. 5 (3d Cir. 2004).

Generally speaking, there are three steps for a court to consider in determining whether a complaint meets the requisite pleading standard. First, the court must outline the basic elements of the plaintiff's claims. Second, the court must ignore conclusions of law. Finally, the Court must identify well-pled factual allegations, and in assuming their veracity, analyze "whether they plausibly give rise to an entitlement of relief." Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2014).

### (i).   F.R.C.P. 12(f)

"As a general matter, motions to strike under Rule 12(f) are highly disfavored." FTC v. Hope Now Modifications, LLC, 2011 U.S. Dist. LEXIS 24657, at *4-5, Civil Action No.: 09-1204 (D.N.J. Mar. 10, 2011). "The successful motion to strike is granted to 'save time and expense' by clearing away pleadings 'which will not have any possible bearing on the outcome of the litigation.'" Id., citing Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002). Additionally, "even where the challenged material is redundant, immaterial, impertinent, or scandalous, a motion to strike should not be granted unless the presence of the surplusage will prejudice the adverse party." Id., citing Symbol Techs., Inc. v. Aruba Networks, Inc., 609 F. Supp. 2d 353, 359 (D. Del. 2009).

### B.   Red Hawk Possesses Standing

Siemens alleges two bases by which RH does not possess standing to sue Siemens. First, Siemens contends that as the relevant Distributorship Agreements

6

are between DPSI and Siemens, RH has no right to sue. Second, Siemens contends that RH's purchase of Siemens constitutes a breach of the Distributorship Agreements.

### (i).    Legal Standard

As a general matter, Article III of the United States Constitution requires that to have standing, a plaintiff has suffered an injury in fact, caused by a defendant's alleged conduct, and redressable by the relief sought. Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273-74 (2008). "[T]he minimum requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 108 (2d Cir. 2008), citing Sprint, 544 U.S. at 289. "Thus, a plaintiff in a breach of contract case has standing only where that party holds some title or interest created by the contract." Med-X Global, LLC v. Azimuth Risk Solutions, LLC, 2018 U.S. Dist. LEXIS 144884, *5, Civ Action No.: 17-13086 (D.N.J., Aug. 27, 2018).[1] Stated differently, all RH/DPSI needs to demonstrate at this stage to maintain its claim is that it has some minimal interest in the Distributorship Agreements.

---

[1] See Exhibit A, Certification of Timothy I. Duffy, Esq.

7

### (ii).   RH Possesses an Interest in the Distributorship Agreements

Unbelievably, Siemens argues that RH does not possess standing to sue on the Distributorship Agreements, yet on the very page it makes that argument, Siemens later acknowledges that RH purchased DPSI. *See pg. 16, ECF Docket #31.* In its own Motion, Siemens contradicts itself in levying this argument. RH did, in fact, purchase DPSI on or about January 2, 2018. By the very terms of that purchase agreement, RH purchased all the securities of Diversified Protection Systems, LLC. This purchase inherently included any right by DPSI to initiate litigation against Siemens for a breach of the Distributorship Agreements, or any other legal theory. Accordingly, Siemens' argument as to RH's standing to sue must be ignored in its entirety.

### (iii).   RH's Purchase of DPSI Is Not a Material Breach of the Distributorship Agreement

Likewise, Siemens' claim that RH's purchase of DPSI results in a material breach of the Distributorship Agreements is also flawed. Initially, this issue is not ripe for a Motion to Dismiss pursuant to either F.R.C.P. 12(b)(6) or 12(f). Instead, this argument is only proper in the context of a F.R.C.P. 56 Motion for Summary Judgment. Motions to Dismiss require the Court to consider all allegations levied by the claimant as true, and assuming such truth, a determination must be made whether a cognizable and plausible claim exists under current law. A Motion for

8

Summary Judgment is used to determine, assuming no material of fact is in dispute, whether judgment is warranted. As the 4th Circuit has held:

> Rule 12(b)(6) is functionally similar to Fed. R. Civ. P. 56 but it differs in two important respects. First, Rule 12(b)(6) and Rule 56 place different burdens on the parties. Second, the two rules encompass different parameters of consideration. Rule 12(b)(6) restricts a court to consider only the pleadings, while Rule 56 permits a court to consider matters outside the pleadings such as affidavits, admissions on file, answers to interrogatories and depositions.

Harding v. Kellam, 1998 U.S. App. LEXIS 16307, *14, Civil Action No.: No. 97-1360 (4th Cir., July 15, 1998).[2] In levying its own allegations that RH/DPSI breached the Distributorship Agreements, Siemens has blurred the lines between a F.R.C.P. 12(b)(6) Motion to Dismiss with a F.R.C.P. 56 Motion for Summary Judgment. Accordingly, Siemens' Motion to Dismiss should be denied.

Even if, for some reason, the Court *sua sponte* converted Siemens' Motion to Dismiss into a Motion for Summary Judgment, denial of the Motion is still appropriate. A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P. 56(c). The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."

---

[2] See Exhibit B, Duffy Cert.

9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). When deciding whether the existence of a genuine issue of material fact actually exists, a Court must review the underlying facts and draw all reasonable inferences, doubts, and issues of credibility in favor of non-moving party. Thus, motions for summary judgment require judges to assess what a fair-minded jury could reasonably decide. *See* Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460 (3d Cir. 1989); *see also* Meyer v. Riegel Products Corp., 720 F.2d 303, 307 (3d Cir. 1983); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987). It is on this review that Siemens' Motion fails.

A breach is material if it "goes to the essence of the contract." Ross Sys. v. Linden Dari-Delite, Inc., 35 N.J. 329, 341 (1961). To determine whether a breach of an agreement is material, the District Court of New Jersey must look to the criteria set forth in Section 241 of the Restatement (Second) of Contracts (1981). Thus, the fact finder must determine:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

10

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and]

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second), § 241. Simply put, this Court is not in a position to make determinations or weigh the aforementioned factors based on the allegations contained within the First Amended Complaint and the conclusory allegations levied in Siemens' Motion. Discovery will be absolutely necessary to establish Siemens' claims. Therefore, the Court is not able to determine whether a genuine issue of material fact exists, necessitating the denial of Siemens' Motion.

Finally, even if the Court were able to determine that no genuine issue of material fact existed, Siemens' Motion would still fail. Siemens correctly identifies the fact that RH purchased DPSI on or around January 2, 2018. Siemens also points to the following two provisions contained within the Distributorship Agreements, which it alleges, dictate that RH's purchase breached same. The Distributorship Agreements read, in relevant part:

[§ 20.A.] "Distributor shall not assign, subcontract, subdivide or otherwise transfer this Agreement or any part thereof or any right or interest under or in this Agreement (including without limitation the entering of

11

any subdistributorship or distributorship agreement) without the prior written consent of Siemens, which consent may be withheld for any reason whatsoever. *Any change in beneficial ownership of Distributor or change otherwise in the control of Distributor shall be deemed to be such an assignment. Any such assignment, subcontract, subdivision or transfer without the prior written consent of Siemens shall be void and a breach of this Agreement.* Siemens may assign this Agreement to its parent, subsidiary or affiliated company or any successor by reason of corporate acquisition or merger."

[§ 15.D.(2)(d) and (f)] "To the extent permitted by governing law, *Siemens shall have the right, at its option, to terminate (without judicial resolution) this Agreement*:

. . .

(2) at any time, if any one or more of the following events shall have occurred and be continuing, by giving notice to Distributor of such termination:

. . .

(d) *any change in ownership, control, financial interest, active management of Distributor or any change of material fact Distributor's finances*;

. . .

*See ECF Docket #31.*

Pursuant to the foregoing, Siemens alleges that RH's purchase of DPSI in January 2018 is violative of the Distribution Agreements and, therefore, RH does not possess standing to bring forth the First Amended Complaint. Siemens has created this position after the facts of this case came to light. The February 7 Cure Letter did not mention the RH purchase of DPSI as a basis for a possible

termination. All the February 7 Cure Letter mentions is that DPSI was not meeting sales expectations. Further, the March 9 Termination Letter mentioned no reason whatsoever for the termination. Had RH's purchase been the basis for termination, same would have been outlined in one of the letters.

Finally, given that the Distribution Agreements were admittedly in place between DPSI and Siemens for a least three (3) months after RH's purchase of DPSI, such a "breach" would be deemed waived. "Waiver is the voluntary and intentional relinquishment of a known right." Knorr v. Smeal, 178 N.J. 169, 177, 836 A.2d 794 (2003). There must be "full knowledge of [its] legal rights and intent to surrender those rights." Id. A party need not expressly state its intent to waive a right; rather, waiver can occur implicitly if "the circumstances clearly show that the party knew of the right and then abandoned it, either by design or indifference." Id. Such a waiver must be done "clearly, unequivocally, and decisively." Id. Determining whether a party waived a right is a fact-sensitive analysis. Id. DPSI asserts that through discovery, DPSI will be able to establish that Siemens waived the right to cancel the Distribution Agreements on this basis.

Accordingly, Siemens' Motion should be denied.

13

**C.     The Contractual Limitation of Liability Clauses Have No Bearing on This Application**

Siemens, in its Motion, alleges that a limitation of liability clause contained within the Distributorship Agreements warrants a dismissal of DPSI's Amended Complaint.  Such an argument is flawed for multiple reasons.

**(i).     Siemens Argues that the First Amended Complaint be Dismissed because DPSI has not "Established" the Damages it Seeks**

Initially, Siemens argues that the First Amended Complaint should be dismissed because DPSI "cannot establish any cognizable damage for any count." Yet again, Siemens confuses the burden placed upon DPSI in filing the First Amended Complaint.  At this juncture, DPSI isn't required to establish anything; DPSI is only required to allege a sufficient and cognizable claim, which it has done.  Accordingly, Siemens' argument is wholly without merit.

**(ii).     The Limitation of Liability Clause is Ripe for Summary Judgment, Not a Motion to Dismiss**

Despite Siemens' assertions to the contrary, a determination of the validity of the limitation of liability clause is not ripe for a Motion to Dismiss.  As stated above, all that is required of DPSI at this juncture is to cognizably allege a claim. To the extent that a determination must be made on the applicability of Siemens' limitation of liability clause, same must be done at the summary judgment stage, not during the present motion.

14

### (iii).   Even if the Limitation of Liability Issue is Ripe, the Clause Which Siemens Relies Upon is Not Valid Under New Jersey Law

Even if this Court determined that it was proper to weight the validity of Siemens' limitation of liability clause at this time, same should be found to be unenforceable.  The Courts of New Jersey have not hesitated to invalidate limited liability clauses that are unconscionable or in violation of public policy.  Moriera Constr. Co., Inc. v. Moretrench Corp., 97 N.J. Super. 391, 394 (App. Div. 1967), *aff'd* 51 N.J. 405 (1968).  As to unconscionability, "[t]here is not hard and fast definition…"  Lucier v. Williams, 366 N.J. Super. 485, 492 (App. Div. 2004).  Unconscionability is "an amorphous concept obviously designed to establish a broad business ethic."  Kugler v. Romain, 58 N.J. 522, 543 (1971).  "The standard of conduct that the term implies is a lack of 'good faith, honesty in fact and observance of fair dealing.'"  Lucier, 366 N.J. Super. at 492, *quoting* Kugler, 58 N.J. at 544.  In determining whether to enforce the terms of such an agreement, a Court must consider "the subject matter of the contract, the parties' relative bargaining positions, the degree of economic compulsion motivating the 'adhering' party, and the public interests affected by the contract."  Rudbart v. North Jersey District Water Supply Comm'n, 127 N.J. 344, 356, *cert. denied*, 506 U.S. 871 1992.  The validity of a limitation of liability clause also rests on "whether the limitation is a reasonable allocation of risk between the parties or whether it runs afoul of the public policy disfavoring clauses which effectively immunize parties

15

from liability for their own negligent actions." Lucier, 366 N.J. Super. at 492,

citing Vahal, 44 F.3d at 202-04. "To be enforceable, the amount of the cap on a

party's liability must be sufficient to provide a realistic incentive to act diligently."

Id. The limitation of liability clause present in the Distribution Agreements should

be found void as unconscionable.

The provisions at issue read as follows:

> [§ 10.A.] "Siemens shall endeavor to fill Distributor's orders promptly. Siemens shall in no event be liable to Distributor or any other person for any loss, cost or damage, whether direct, indirect, consequential or otherwise, arising out of or resulting from any failure to ship or deliver, or any delay or nonconformity in shipment or delivery of any portion or all of the Products ordered by Distributor."

> [§ 16.C.] "Notwithstanding any laws, regulations or business practices now or hereinafter in effect, neither Siemens nor Distributor shall by reason of the termination of this Agreement be liable or in any way responsible to the other for damages on account of the loss of prospective profits or anticipated sales or on account of expenditures, investments, leases, property, improvements or other commitments in connection with the business or good will of Siemens or Distributor, as the case may be."

> [§ 16.E.] "All claims of Distributor arising from or in connection with the termination of this Agreement shall be excluded. In particular, Distributor shall not be entitled to any compensation for orders of customers of Distributor in the Area placed with Siemens or any third party after the termination of the Agreement."

16

[§ 19.] "In no event shall Siemens be liable to Distributor for special, indirect, incidental or consequential damages, including commercial loss, loss of use, or lost profits, even if Siemens has been advised of the possibility of such damages. Anything contained in this Agreement to the contrary notwithstanding, Siemens' aggregate liability for any and all claims arising out of this Agreement, or out of any Products or services furnished under this Agreement, whether based in contract, negligence, strict liability, agency, warranty, trespass, indemnity or any other theory of liability, shall be limited to $100,000."

*See ECF Docket #31, Attachment #8; ECF Docket #31, Attachment #9, ECF Docket #31, Attachment #10.* Therefore, based on these provisions in the Distributorship Agreements, Siemens contends any damage is limited to the amount of $100,000.00. It is clear, however, that the limitation on liability in this matter is not an incentive for Siemens to act faithfully. In the matter at bar, DPSI is alleging that it secured approximately $1,600,000.00 in expected revenue. Further, DPSI alleges that after Siemens wrongfully terminated the Distributorship Agreements, Siemens retained that $1,600,000.00 in business for itself. Therefore, it is clear based on DPSI's allegations that the parity between the amount to be realized by Siemens in breaching the agreement in contrast with the minimal amount of the penalty Siemens would be compelled to pay under the limitation of liability clause, the limitation of liability clause would be held unconscionable. In other words, if the limited liability clause stands, Siemens would be in a position to net a $1,500,000.00 windfall to terminate DPSI. Such a result is untenable.

17

Moreover, there is a substantial likelihood that this Court would find the limitation of liability clause contrary to public policy. In <u>Lucier</u>, the Court found that an exculpation clause in a professional services contract was contrary to public policy. 366 <u>N.J. Super.</u> at 496. Inherently, an exculpation clause is different from a limitation of liability clause. An exculpation clause is "[a] contractual provision relieving a party from any liability resulting from a negligent or wrongful act." *Black's Law Dictionary*, 588 (7th ed. 1999). A limitation of liability clause is a "contractual provision by which the parties agree on a maximum amount of damage recoverable for a future breach of the agreement." <u>Id.</u> at 939. In <u>Lucier</u>, the Court offered the following hypothetical:

> It would indeed be a hollow arrangement if a physician could charge $100 for an office visit and then, if, due to negligence [the patient is injured], the patient's only recourse would be a refund of $50 of the original $100 fee.

366 <u>N.J. Super.</u> at 496. In analyzing the <u>Lucier</u> Court's finding, the New Jersey Appellate Division found:

> This example is not an exculpatory clause. Rather, this example demonstrates a public policy against professional service contracts containing limitation of liability provisions which cap damages at such a level so as to be "tantamount to an exculpation clause."

18

66 VMD Assocs., LLC v. Melick-Tully & Assocs., P.C., 2011 N.J. Super. Unpub. LEXIS 2164, * 12, Docket No.: A-4008-09T3 (App. Div., Aug. 11, 2011)[3], *quoting* Lucier, 366 N.J. Super. at 496. The clause at issue in this litigation is analogous to the clause in Lucier. Siemens, if DPSI's allegations are proven true, stands to obtain a windfall of approximately $1,500,000.00 dollars. Such an arrangement, if permitted in this case, would result in a chilling effect in our court system permitting a party to an agreement to avoid meeting its obligations and as a result, receive a substantial windfall. This result is inequitable at best and nefarious at worst. Accordingly, this Court should determine that the limitation of liability clause contained within the Distribution Agreements should be found to be invalid.

## D.    The Breach of Contract Claim is Properly Alleged

Siemens addresses multiple items in its argument supporting the dismissal of the Breach of Contract claim. First, Siemens is correct that DPSI incorrectly identified the cure period as sixty (60) days in its First Amended Complaint. The cure period provided by Siemens was one of thirty (30) days. DPSI apologizes to the Court for its typographical error. However, as set forth below, the termination of the Distribution Agreements still occurred within the thirty (30) day period provided by Siemens to cure the alleged deficiencies by DPSI. Second, DPSI's

---

[3] See Exhibit C, Duffy Cert.

19

contention that the Distribution Agreement was terminated on March 9, 2018 isn't incorrect; while Siemen's indicated the Distribution Agreements wouldn't be terminated until May 7, 2018, the termination letter was purportedly sent on March 9, 2018.

Turning to the substantive arguments by Siemens, Siemens' argument that RH/DPSI does not possess standing to assert the breach of contract claim is addressed above. Next, Siemens contends that it was entitled to cancel the Distributorship Agreements pursuant to the terms of same. Such an argument is not permitted at this time; rather, this argument is appropriate for a F.R.C.P. 56 Motion for Summary Judgment. Regardless, Siemens' position is flawed.

The February 7 Cure Letter indicated that Siemens was providing a thirty (30) day period with which DPSI was to increase its sales to meet required sales quota under the terms of the Distributorship Agreements. Thereafter, on March 9, 2018, Siemens sent the March 9 Termination Letter, purportedly outside of the cure period and citing no reason for the termination. However, the March 9 Termination Letter was sent within the thirty (30) day cure period, as pursuant to the terms of the Distribution Agreements, "[a]ll notices...shall be deemed to have been duly given to the party for whom intended...seven calendar days after deposit in the United States or Area postal service enclosed in a first class postage...."

Therefore, the March 9 Termination Letter, pursuant to this provision, was given to DPSI within the cure period.

Next, Siemens' argues that the limitation of liability clause present in the Distribution Agreements precludes recovery. DPSI has addressed this argument herein. Finally, Siemens argues that RH/DPSI materially breached the Distribution Agreements by RH's purchase of DPSI. That same argument is addressed herein.

Accordingly, Siemens' Motion to Dismiss should be denied.

**E.    The Economic Loss Doctrine Does Not Warrant Dismissal at This Juncture**

While Siemens correctly asserts that the Economic Loss Doctrine would preclude DPSI from recovering damages on a contract-based theory and tort-based theory of liability simultaneously, Siemens completely ignores the fact that DPSI is permitted to plead as many cognizable cause of action as it wishes, even if said causes of action conflict with one another, since DPSI is permitted to plead claims in the alternative.

"The Federal Rules of Civil Procedure expressly permit inconsistent pleading." Dando v. Bimbo Food Bakerites Distrib., LLC, 2017 U.S. Dist. LEXIS 54327, *9, Civil Action No.: 14-2956 NLH-KMW (D.N.J., April 10, 2017),[4] *citing* F.R.C.P. 8(d)(3). F.R.C.P. 8(d)(2) reads, in pertinent part, "[a] party may set out

---

[4] See Exhibit D, Duffy Cert.

21

two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Moreover, the Rule further states a "party may state as many separate claims or defenses as it has, regardless of consistency." Stated differently, "[a] plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts…[a] Plaintiff may plead alternative legal theories at the motion to dismiss stage." Doherty v. Hertz Corp., 2010 U.S. Dist. LEXIS 124714 (D.N.J., Nov. 24, 2010).[5] Accordingly, DPSI is permitted to plead as many cause of action as it so desires at this stage, regardless of consistency or the claims' ability to cohabitate at the time of trial. Therefore, Siemens' Motion to Dismiss should be denied on this ground.

### (i).    Breach of Covenant of Good Faith and Fair Dealing

It should be noted, in addition to the foregoing, Siemens cites no case which determines that a Breach of the Covenant of Good Faith and Fair Dealing claim should be dismissed at the Motion to Dismiss stage by the Economic Loss Doctrine. Accordingly, Siemens' Motion to Dismiss should be denied.

### (ii).   Unjust Enrichment

Likewise to the Breach of the Covenant of Good Faith and Fair Dealing claim, Siemens cites no opinion dismissing an Unjust Enrichment claim being

---

[5] See Exhibit E, Duffy Cert.

22

plead alongside a breach of contract claim due to the Economic Loss Doctrine. This is so because DPSI is expressly permitted to plead both claims alongside one another (*see* § F below). Accordingly, Siemens' Motion to Dismiss should be denied.

### (iii). Fraud/Fraudulent Misrepresentation

Siemens contends that DPSI's fraud claims are precluded by the Economic Loss Doctrine as the claims are solely related to Siemens' alleged non-performance of the Distribution Agreements. This is simply not true.

In the First Amended Complaint, DPSI alleged the following:

> 57. Siemens represented to DPSI, in correspondence of February 7, 2018 that DPSI "has a 30 day cure period to make improvements; after which, if improvements do not result in sales required per agreement, it will be terminated effective 90 days from the date of this letter."
>
> 58. Upon information and belief, at the time Siemens made this representation and promise to DPSI, Siemens had no intention of providing a 30-day cure period.
>
> 59. Upon information and belief, Siemens was aware of the falsity of its promise to provide a cure period when the statement was made.
>
> 60. Upon information and belief, Siemens made the false cure period promise with the intention to deceive DPSI and induce DPSI to continue and to increase its efforts to promote, sell and distribute Siemens' products during the cure period and while

23

Siemens prepared to compete directly with DPSI and/or make other distribution arrangements.

61.   Siemens further intended to induce DPSI to bid projects with Siemens' products, to abstain from bidding projects with competitor products and to refrain from challenging sole source activity engaged in by Siemens.

62.   DPSI was indeed induced to and did continue promoting, selling, bidding and distributing Siemens' products during the falsely promised cure period, including by bidding on projects using Siemens' products when other products were available to DPSI, and by not challenging Siemens' sole source arrangements.

63.   DPSI undertook the referenced actions to its detriment, and in reliance on the false cure period promise.

64.   Consequently, DPSI was prevented from bidding competitor products and did promote, sell, bid and distribute Siemens' products during the cure period. Siemens, however, unbeknownst to DPSI, was undercutting DPSI efforts by surreptitiously contacting ultimate customers and stating to them that DPSI was not an authorized Siemens' distributor and would not be able to perform on any sale or successful bid award to DPSI.

65.   Siemens' activities in this regard caused DPSI to expend significant work and expense in futile bidding efforts, prevented DPSI from obtaining bids and interfered with DPSI's ability to make sales, all of which, resulted in substantial damage to DPSI in direct sales, repeat sales, maintenance agreements and future service and repair work.

24

*See ECF Docket #29, Attachment #1.* It is clear by the allegations contained within the First Amended Complaint that DPSI isn't basing the fraud claims on its non-performance. Rather, DPSI is basing the fraud claims off of the affirmative misrepresentations made by DPSI outside of the four corners of the Distribution Agreements in the February 7 Cure Letter. According, Siemens' Motion should be denied.

### (iv). Defamation

Yet again, Siemens fails to cite a case for the proposition it contends. Siemens argues that since the alleged defamation is tied to the Distribution Agreements, the Defamation count must fail due to the economic loss doctrine. Simply put, Siemens has offered nothing to support this argument, and accordingly, Siemens' Motion should be denied.

### F.    Unjust Enrichment is Properly Alleged

Siemens also contends that DPSI's Unjust Enrichment claim is untenable as a matter of law. At its core, Siemens contends that the Unjust Enrichment claim is merely duplicative of DPSI's breach claims. Furthermore, Siemens contends that DPSI cannot maintain the Unjust Enrichment claim in light of the existing Distribution Agreements between Siemens and DPSI. Siemens wholly ignores DPSI's ability to plead in the alternative.

As set forth above, DPSI has the ability at this stage to plead inconsistent and alternative forms of relief. This is particularly true with Unjust Enrichment claims. "While a plaintiff may not recover on both a breach of contract claim and an unjust enrichment claim, a plaintiff may plead alternative and inconsistent legal causes of action arising out of the same facts..." Simonsen, 2011 U.S. Dist. LEXIS at *5. To that end, the District of New Jersey "has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature." Id. Therefore, Siemens' argument that DPSI's Unjust Enrichment claim is duplicative and inappropriate is wholly without merit.

### G.  Fraud/Fraudulent Misrepresentation is Properly Alleged

Siemens contends that DPSI failed to properly allege a claim for Fraud and Fraudulent Misrepresentation on two main theories. First, Siemens alleges that the Fraud counts should be dismissed since they are based on "an erroneous understanding of the cure period, direct competition by Siemens and DPS INC, withholding of products by Siemens in default situations by DPS INC, and notice of pending termination of the distributorship by Siemens." *See ECF Docket #31.* Second, Siemens claims that DPSI's claims fail since the Distribution Agreements "expressly provide for the lawful actions of Siemens..." Both theories fail at this juncture.

26

As initial matter, like many arguments contained within Siemens' Motion, this argument would be more appropriate for a Motion for Summary Judgment. Siemens is asking the Court to make factual determinations at a stage where it is only appropriate for the Court to consider all allegations by DPSI as true. For this reason alone, the Court should deny Siemens' Motion. To the extent Siemens argues that DPSI failed to plead the Fraud Counts with the specificity required by F.R.C.P. (9)(b), that argument also fails.

F.R.C.P. 9(b) requires a claimant to plead, with particularity, the "circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior. It is certainly true that allegations of 'date, place or time' fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injection precision and some measure of substantiation into their allegations of fraud." Braunstein v. Benjamin Berman, Inc., 1990 U.S. Dist. LEXIS 20922, *15, Civil Action No. 89-5344 (D.N.J., Sep. 14, 1990),[6] *quoting* Seville Indus. Machinery v. Southmost Machinery, 742 F.2d 786, 791 (3d Cir. 1984), *cert. denied*, 469 U.S. 1211 (1985). "A complaint need not read like a laundry list of dates, times and persons involved

---

[6] See Exhibit F, Duffy Cert.

27

in the underlying transaction, as long as it sets forth enough information to provide

factual support for plaintiff's allegations." The Third Circuit has held:

> In applying the first sentence of Rule 9(b) courts must be sensitive to the fact that its application, prior to discovery, may permit sophisticated defrauders to successfully conceal the details of their fraud. Moreover, in applying the rule, focusing exclusively on its "particularity" language " is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the rules. 5 C. Wright & A. Miller, Federal Practice and Procedures § 1298, at 407 (1969).

Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1986).

Based on the foregoing standard, DPSI has properly alleged claims for fraud and

fraudulent misrepresentation.

In the First Amended Complaint, DPSI alleges:

> 57.   Siemens represented to DPSI, in correspondence of February 7, 2018, that DPSI "has a 30 day cure period to make improvements; after which, if improvements do not result in sales required per agreement, it will be terminated effective 90 days from the date of this letter."

> 58.   Upon information and belief, at the time Siemens made this representation and promise to DPSI, Siemens had no intention of providing a 30-day cure period.

> 59.   Upon information and belief, Siemens was aware of the falsity of its promise to provide a cure period when the statement was made.

28

60. Upon information and belief, Siemens made the false cure period promise with the intention to deceive DPSI and induce DPSI to continue and to increase its efforts to promote, sell and distribute Siemens' products during the cure period and while Siemens prepared to compete directly with DPSI and/or make other distribution arrangements.

61. Siemens further intended to induce DPSI to bid projects with Siemens' products, to abstain from bidding projects with competitor products and to refrain from challenging sole source activity engaged in by Siemens.

62. DPSI was indeed induced to and did continue promoting, selling, bidding and distributing Siemens' products during the falsely promised cure period, including by bidding on projects using Siemens' products when other products were available to DPSI, and by not challenging Siemens' sole source arrangements.

63. DPSI undertook the referenced actions to its detriment, and in reliance on the false cure period promise.

64. Consequently, DPSI was prevented from bidding competitor products and did promote, sell, bid and distribute Siemens' products during the cure period. Siemens, however, unbeknownst to DPSI, was undercutting DPSI efforts by surreptitiously contacting ultimate customers and stating to them that DPSI was not an authorized Siemens' distributor and would not be able to perform on any sale or successful bid award to DPSI.

65. Siemens' activities in this regard caused DPSI to expend significant work and expense in futile bidding efforts, prevented DPSI from obtaining bids and interfered with DPSI's ability to make sales, all of

which, resulted in substantial damage to DPSI in direct sales, repeat sales, maintenance agreements and future service and repair work.

66.   The actions of Siemens were fraudulent, oppressive, and malicious, entitling DPSI to an award of punitive damages.

*See ECF Docket #29, Attachment #1.*

It is clear by the allegations recited above, DPSI has placed Siemens on sufficient notice of the alleged fraudulent conduct.   Accordingly, Siemens' Motion to Dismiss must be denied.

## H.   Defamation is Properly Alleged

Siemens' argument that the qualified privilege doctrine warrants dismissal of the Defamation Count is flawed.   "A party asserting a qualified privilege in a motion to dismiss, as Defendant does here, bears the burden of establishing that the existence of the privilege is 'apparent from the face of the complaint.'   Gregory v. Gregory, 2015 U.S. Dist. LEXIS 142736, *8, Civil Action. No.: 15-00320 (D.N.J., Oct. 21, 2015), *quoting* Mangan v. Corporate Synergies Group, Inc., 834 F. Supp. 2d 199, 209 (D.N.J. 2011), *citing* Bethel v. Jendoco, 570 F.2d 1168, 1174 n. 10 (3d Cir. 1978).   Siemens fails to meet that burden.

Siemens asserts that "it would be unfathomable for Red Hawk to contend that customers and contractors should not know that a bid by DPS INC on a prospective project would be worthless, as DPS INC would not be able to sell or

30

service the Siemens' products identified in the bids." *See ECF Docket #31.*

Siemens also contends that it "had a contractual right to compete in the same market as DPS INC, and DPS INC was already in default under the Agreements at the time the alleged defamatory communication took place." *See ECF Docket #31.* Somehow, Siemens believes that these bald statements meet the burden of maintain the qualified privilege claim at this juncture. This argument is borderline laughable, particularly since DPSI has alleged the following facts pertinent to the Defamation claim:

> 14. By way of example, and by no means of limitation, Siemens sent a letter to all the general contractors bidding on the Escondido Union School District, Mission Middle School modernization project (the "Mission Project"), falsely alleging that DPSI would not be able to provide the materials required to perform the Mission Project as a potential subcontractor because Siemens was canceling DPSI's distributorship.

*   *   *   *   *

> 18. Since that time, DPSI has learned that Siemens has contacted a large number of general contractors and DPSI's former and potential customers, apparently stating that DPSI has been terminated as a dealer of Siemens.

*   *   *   *   *

> 83. As alleged herein, Siemens published false statements about DPSI to DPSI's customers and potential customers for the sole purpose of interfering with DPSI's business opportunities and to usurp those opportunities.

31

84.  Siemens was aware of the falsity of these statements when the statements were made.

85.  The defamatory and disparaging statements about DPSI are outrageous and false.

86.  DPSI has enjoyed a good name and reputation in the industry.

87.  The defamatory and disparaging statements by Siemens have been spoken, written, or otherwise published to third persons maliciously, recklessly, and/or in bad faith.

88.  DPSI's reputation has been substantially harmed and is at risk of further substantial harm by the past, continuing, and ongoing defamation by Siemens.

*See ECF Docket #31.* Based on the foregoing allegations alone, DPSI has asserted a palpable claim for defamation. Based on the facts alleged on the face of the Complaint, Siemens has utterly failed in meeting its burden to demonstrate that its communications are protected by the qualified common interest doctrine. Accordingly, Siemens' Motion to Dismiss must be denied on this basis.

Furthermore, Siemens improperly alleges that DPSI fails to properly assert a claim for defamation in the First Amended Complaint. Nothing could be further from the truth. As can be easily seen from the foregoing allegations, DPSI has pled a sufficient claim for defamation. DPSI, in the foregoing allegations, has alleged sufficient facts demonstrating a false statement about the plaintiff to a third person that harms the plaintiff's reputation in the eyes of the community or deters

32

third persons from associating with the plaintiff." Gumbs v. O'Connor, 2011 WL 1322238, at *8, No. 10–1520 (D.N.J. Apr. 4, 2011), *citing* Dello Russo v. Nagel, 358 N.J. Super. 254, 262–263 (App. Div. 2003). Specifically, in meeting its requirement to allege "the defamatory words, the person who spoke them, and the fact of their publication," F.D.I.C. v. Bathgate, 27 F.3d 850, 875 (3d Cir. 1994), *citing* Zoneraich v. Overlook Hosp., 212 N.J. Super. 83 (App. Div. 1986), DPSI alleged that Siemens made statements to third parties regarding DPSI's ability to conduct business with Siemens-brand products. DPSI has met its burden, and accordingly, Siemens' Motion must be denied.

## I.    Punitive Damages is Properly Requested Relief

Siemens contends that DPSI is not able to seek punitive damages in this litigation on three grounds. First, Siemens contends that punitive damages are not recoverable in contract-based theories of recovery. Second, Siemens contends that the punitive damages claim must be stricken due to the limitation of liability clause present in the Distribution Agreements. Finally, Siemens contends that since DPSI's tort-based claims should be dismissed, any punitive damage recovery from those claims should be stricken.

While Siemens is correct that punitive damages cannot be sought in contract-based claims, Siemens ignores that DPSI has properly set forth a cause of action in fraud. "The key to the right to punitive damages is the wrongfulness of

33

the intentional act." <u>Nappe v. Anschelewitz, Barr, Ansell & Bonello</u>, 97 <u>N.J.</u> 37, 50 (1984). "The right to award exemplary damages primarily rests upon the single ground -- wrongful motive..." <u>Dreimuller v. Rogow,</u> 93 <u>N.J.L.</u> at 3; *see also* <u>Trainer v. Wolff</u>, 58 <u>N.J.L.</u> 381 (E. & A. 1895). As DPSI is permitted to plead claims in the alternative, and DPSI has sufficiently plead allegations of wrongful motive on the part of Siemens, DPSI's claims for punitive damages must be permitted to stand. Further, as set forth in full above, the validity of the limitation of liability clause contained within the Distribution Agreements should not be addressed at this time. Further, the limitation of liability clause is not valid. Finally, as DPSI's tort-based claims should not be stricken, DPSI is permitted to proceed with a punitive damages theory of recovery.

**J.     Jury Trial**

DPSI is willing, and will consent, to retract its demand for a jury trial in this matter.

Point Two

<u>**ALTERNATIVELY, IF THE COURT GRANTS ALL OR PART OF SIEMENS' MOTION, DPSI SHOULD BE PERMITTED LEAVE TO AMEND THE FIRST AMENDED COMPLAINT**</u>

If, for some reason, the Court believes that a portion or all of Siemens' Motion should be granted, DPSI should be given leave to amend the First

34

Amended Complaint.   Before a district court may dismiss a Complaint, with prejudice, the Court must:

> Expressly state, where appropriate, that the plaintiff has leave to amend within a specified period of time, and that application for dismissal of the action may be made if a timely amendment is not forthcoming within that time. If the plaintiff does not desire to amend, he may file an appropriate notice with the district court asserting his intent to stand on the complaint, at which time an order to dismiss the action would be appropriate.

Nix v. Welch & White, P.A., 55 Fed. Appx. 71, 73 (3d. Cir. 2003), *quoting* Borelli v. City of Reading, 532 F.2d 950 (3d. Cir. 1976).   This holding supports the general proposition that leave to amend, even if not requested, should be permitted if the deficiency can be cured by amending the pleading.   Shane v. Fauver, 213 F.3d 113, 116 (3d. Cir. 2000), *citing* Borelli, 532 F.2d at 950.   This is so because "absent futility…case law grants [a plaintiff] the opportunity to amend after the dismissal." Nix, 55 Fed. Appx. at 73.

Accordingly, should the Court entertain granting all or part of Siemens' Motion to Dismiss, the Court must grant DPSI the opportunity to amend the First Amended Complaint.

## CONCLUSION

For all of the foregoing reasons, DPSI respectfully requests that Siemens' Motion to Dismiss be denied.   Alternatively, DPSI requests that it be permitted leave to amend the First Amended Complaint.

*/s/ Timothy I. Duffy, Esq.*
Timothy I. Duffy, Esq.

*/s/ Michael A. Spizzuco, Jr., Esq.*
Michael A. Spizzuco, Jr., Esq.

**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Telephone: (973) 631-6002
Fax: (973) 267-6442
tduffy@coughlinduffy.com
mspizzuco@coughlinduffy.com

Dated: October 7, 2019

36