# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RED HAWK FIRE & SECURITY, LLC, SUCCESSOR-IN-INTEREST TO DIVERSIFIED PROTECTION SYSTEMS, LLC,** | Civil Action No. 19-13310 |
| *Plaintiff,* | OPINION |
| v. | |
| **SIEMENS INDUSTRY INC., et al.,** | |
| *Defendants.* | |

ARLEO, UNITED STATES DISTRICT JUDGE

**THIS MATTER** comes before the Court by way of Defendant Siemens Industry Inc.'s ("Defendant" or "Siemens") Motion to Dismiss the Amended Complaint, ECF No. 29.1, and Strike Claims of Plaintiff Red Hawk Fire & Security, LLC's ("Plaintiff" or "Red Hawk") under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(f). ECF No. 31. Also before the Court is Red Hawk's Motion to Strike its first-filed opposition to Defendant's Motion located at Docket Number 36. ECF No. 38. For the reasons set forth herein, Defendant's Motion is **GRANTED in part and DENIED in part**, and Red Hawk's Motion is **GRANTED**.

## I. BACKGROUND

This action arises from a series of distributor agreements executed between Diversified Protection Systems, Inc. ("DPS Inc.") and Siemens under which DPS Inc. agreed to act as a distributor of Siemens' products in various areas of California.[1] Am. Compl. ¶ 5. In total, the

---

[1] Red Hawk, newly identified in the Amended Complaint's caption as the plaintiff, alleges that Diversified Protection Services, LLC ("DPS LLC") entered the Distributor Agreements, and Red Hawk is the successor-in-interest to DPS LLC's rights and obligations under the agreements in dispute. Am. Compl. ¶¶ 5-6. Those agreements and agreement renewal forms, however, identify DPS Inc.—not DPS LLC—as the co-executor. Johnson Decl., Exs. 5-10. The Court

parties entered three agreements: two on October 1, 2014 covering Anaheim and Fremont, and one on May 1, 2016 covering San Diego (the "Distributor Agreements"). Johnson Decl., Exs. 5-7. On October 1, 2017, the parties executed renewal forms, extending the Distributor Agreements until September 30, 2018. See Am. Compl. ¶ 6; Johnson Decl., Exs. 8-10. Among other things, the Distributor Agreements required DPSI to exceed $100,000 in its aggregate sales of Siemens's products. Am. Compl. ¶ 8.

On February 7, 2018, Siemens sent a letter to DPSI, notifying it that DPSI had not met Siemens's purchase quotas and had thirty days to cure its breach, and if it did not, Siemens would terminate the Distributor Agreements effective ninety days from the date of the letter. See id. ¶¶ 9-10. DPSI thereafter made "significant efforts to comply with Siemens's requests and was . . . close in meeting Siemens's expectations." Am. Compl. ¶ 12. Nonetheless, on March 9, 2018, Siemens notified DPSI that it would terminate the Distributor Agreements on May 7, 2018. See id. ¶ 12.

Red Hawk alleges that soon after sending the March termination notice, Siemens took actions that made it "clear that Siemens intended to undermine DPSI's efforts." Am. Compl. ¶ 13. According to Red Hawk, Siemens sent a letter to "general contractors on [a school district modernization project], falsely alleging that DPSI would not be able to provide the materials required to perform [the project] because Siemens was cancel[l]ing DPSI's distributorship." Id. ¶ 14. Siemens was allegedly the only other entity bidding to become a subcontractor on the project, and DPSI did not win the bid. See id. ¶¶ 15, 17. Red Hawk claims that but for Siemens's letter,

---

considers the distributor agreements and renewal forms because they are "integral to and explicitly relied upon" in the Amended Complaint. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). For clarity, the Court refers to DPS, Inc. as the executor of the Agreements. However, because the Original Complaint identifies DPS LLC as the successor-in-interest to DPS, Inc. rights under the Agreements, ECF No. 1.3 ("Original Complaint") ¶ 1, the Court uses the Amended Complaint's choice acronym, "DPSI," in its recitation of the relevant facts.

the general contractor who won the bid would have selected DPSI as its subcontractor. Id. ¶ 17. In a similar manner, Siemens allegedly interfered with at least three existing contracts between DPSI and general contractors and further interfered with prospective work DPSI could have retained from its existing and potential customers by notifying those entities that about the Distributor Agreements' termination. See id. ¶¶ 18-20.

On August 15, 2018, DPS LLC filed a Complaint in the Superior Court of California, San Diego County, against Siemens, as successor-in-interest to DPS, Inc.'s rights under the Distributor Agreements. Original Compl. ¶ 1. On September 17, 2018, Siemens removed the matter to the United States District Court for the Southern District of California, ECF No. 1, and filed a motion to transfer venue on September 24, 2018, ECF Nos. 3-5. On May 16, 2019, the United States District Court for the Southern District of California issued an order granting Siemens's motion and transferring the matter to this Court pursuant to the forum selection clause in the Distributor Agreements. ECF No. 12.

On June 25, 2019, counsel for DPS LLC filed a disclosure statement pursuant to Federal Rule of Civil Procedure 7.1, wherein it identified Red Hawk as its "successor-in-interest." ECF No. 18. On August 23, 2019, the parties stipulated to DPS LLC filing an amended complaint, ECF No. 29, and on September 17, 2019, the Magistrate Judge entered a text order deeming the Amended Complaint filed, ECF No. 34. The Amended Complaint identifies Red Hawk as the named plaintiff "[a]s successor-in-interest" to DPS LLC. ECF No. 29.1.

Through its Amended Complaint, Red Hawk brings the following claims against Siemens: (1) breach of the Distributor Agreements ("Count One"); (2) breach of the covenant of good faith and fair dealing ("Count Two"); (3) unjust enrichment ("Count Three"); (4) tortious interference with contract ("Count Four") (5) tortious interference with prospective economic advantage

("Count Five"); (6) fraud ("Count Six"); (7) fraudulent misrepresentation ("Count Seven"); and (8) defamation ("Count Eight").  Am. Compl. ¶¶ 22-89.

Siemens filed the instant Motion to Dismiss and Strike Claims on September 13, 2019.  ECF No. 31.  On October 8, 2019, Red Hawk filed a Motion to Strike its originally-filed opposition to Siemens's motion, indicating that it had filed an incorrect version of its opposition brief.  See ECF No. 38.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of persuading the Court that subject matter jurisdiction exists.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).  In resolving a Rule 12(b)(1) motion, the Court first determines whether the motion presents a "facial" or "factual" attack "because that distinction determines how the pleading must be reviewed."  Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014).

A facial attack argues that a claim on its face "is insufficient to invoke the subject matter jurisdiction of the court," id. at 358, and "does not dispute the facts alleged in the complaint," Davis v. Wells Fargo, 824 F.3d 333, 346 (3d Cir. 2016).  A court reviewing a facial attack must "apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in the favor of the nonmoving party."  Constitution Party of Pa, 757 F.3d at 358.  In contrast, a factual attack is an argument that "the facts of the case . . . do not support the asserted jurisdiction."  Id.  In reviewing a factual attack, the Court may "consider and weigh evidence outside the pleadings to determine if it has jurisdiction."  Gould Electronics Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000), modified on other grounds by Simon v. United States, 341 U.S. 193 (3d Cir. 2003).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction be turned into an attack on the merits." <u>Davis</u>, 824 at 348 (collecting cases). "[W]hen a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at the trial stage.'" <u>Id.</u> at 350 (quoting <u>Mortensen v. First Fed. Sav. And Loan Ass'n</u>, 549 F.2d 884, 892 (3d Cir. 1977)). Generally, courts construe Rule 12(b)(1) motions to dismiss as facial attacks where "the defendants ha[ve] not answered and the parties ha[ve] not engaged in discovery." <u>See</u> <u>Askew v. Church of the Lord of Jesus Christ</u>, 684 F.3d 413, 417 (3d Cir. 2012); <u>NJSR Surgical Ctr., L.L.C. v. Horizon Blue Cross Blue Shield of New Jersey, Inc.</u>, No. 12-753, 2014 WL 2854707, at *3-4 (D.N.J. June 23, 2014) (collecting cases). Here, Siemens's motion is a facial attack because it does not dispute the pleaded facts, but rather whether those facts establish Red Hawk's standing to bring this lawsuit. <u>See</u> Def. Br. at 8-9, ECF No. 31.1. The Court thus accepts the pleaded facts as true and draws all reasonable inferences in Red Hawk's favor. <u>See</u> <u>Constitution Party of Pa</u>, 757 F.3d at 358.

"A motion to dismiss for want of standing is . . . properly brought under Rule 12(b)(1) because standing is a jurisdictional matter." <u>Id.</u> at 357. A party must have standing to invoke the Court's jurisdiction. "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." <u>Id.</u> at 360. To establish constitutional standing, the plaintiff must demonstrate: (1) an injury-in-fact that is concrete and particularized and actual or imminent; (2) a causal connection between the injury and the complained-of-conduct; and (3) that it is likely the injury will be redressed by a favorable decision. <u>Winer Family Trust v. Queen</u>, 503 F.3d 319, 325 (3d Cir. 2007) (citations omitted).

**B.     Rule 12(b)(6)**

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Courts generally may not consider material extraneous to the pleadings in resolving a motion to dismiss except those documents "integral to or explicitly relied upon in the complaint." In re Burlington Coat Factory, 114 F.3d at 1426. Such documents include exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents, see Guidotti v. Legal Helpers Debt Resolution, 716 F.3d 764, 772 (3d Cir. 2013).

**C.     Rule 12(f)**

Pursuant to Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The Rule 12(f) "standard essentially translate[s] into application of the standards of a Rule 12(b)(6) motion to dismiss, with the understanding that a motion to strike should be granted sparingly." Eisai Co., Ltd. v. Teva Pharm. USA, Inc., 629 F. Supp. 2d 416, 424 (D.N.J. 2009). Although the Court has "broad discretion in resolving motions to strike," see Turner v. New Jersey State Police, No. 08-

5163, 2014 WL 6991892, at *2 (D.N.J. Dec. 5, 2014), motions to strike under Rule 12(f) are disfavored and should generally be denied "'unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or . . . confuse the issues.'" Garlanger v. Verbeke, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (quoting Tonka Corp v. Rose Art Indus., Inc., 836 F. Supp. 200, 217 (D.N.J. 1993)); see also Eisai Co., Ltd., 29 F. Supp. 2d at 425 (explaining that striking a pleading is a "drastic remedy to be resorted to only when required for the purposes of justice") (internal quotation marks and citation omitted).

## III.   ANALYSIS

### A.   Article III Standing

Siemens's argument that Red Hawk lacks Article III standing to bring this case is two-fold. First, Siemens contends that Red Hawk has no rights under the Distributor Agreements because those agreements "were between DPS INC and Siemens—not between DPS LLC or Red Hawk and Siemens." Def. Br. at 9.  Second, Siemens asserts that Red Hawk acquiring DPS, Inc. without first obtaining Siemens's written consent constitutes a breach of the Distributor Agreements, and "Red Hawk cannot create standing in violation of those Agreements." Id. at 10-11.  The Court finds both of those arguments unpersuasive.

"[A] plaintiff in a breach of contract case has standing only where that party holds some title or interest created by the contract." Med-X Global, LLC v. Azimuth Risk Sols., LLC, No. 17-13086, 2018 WL 4089062, at *2 (D.N.J. Aug. 27, 2018).  Red Hawk bears the burden of establishing its standing, Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016), and in determining whether Red Hawk has met that burden, the Court must "accept as true all material allegations in the complaint, and . . . construe the complaint in favor of the complaining party." FOCUS v.

Allegheny County Court of Common Pleas, 75 F.3d 834, 838 (3d Cir. 1996) (internal quotation marks and citation omitted).

As to Siemens's first argument, here, the Amended Complaint alleges that Red Hawk is the "successor-in-interest" to DPS LLC. Am. Compl. at 1. Siemens correctly points out that the Amended Complaint does not allege facts demonstrating the connection between DPS LLC and DPS, Inc., the original named plaintiff and executor of the Distributor Agreements. However, Siemens attached to its motion to dismiss a document entitled "Limited Liability Company Articles of Organization – Conversion," a public California filing demonstrating that DPS, Inc. converted from its original corporate form into DPS LLC. ECF No. 31.7. As a public record, the Court may consider this document in determining whether Red Hawk has standing, see Guidotti, 716 F.3d at 772, and finds that it provides the necessary link between DPS, Inc. and Red Hawk missing from the Amended Complaint. In addition, the Original Complaint, filed by DPS LLC, indicates that DPS, LLC was the successor-in-interest to DPS, Inc.'s rights under the Distributor Agreements. Original Compl. ¶ 1. Based on the public filing attached to Siemens's motion to dismiss and the Original Complaint's and Amended Complaint's allegations as true, the Court is satisfied that Red Hawk has sufficiently alleged it holds DPS, LLC's interest in the Distributor Agreements such that it has standing to bring claims arising under them. See CKSJB Holdings, LLC v. EPAM Sys., Inc., 379 F. Supp. 3d 388, 394 (E.D. Pa. 2019) (finding that allegation in Amended Complaint that non-signatory "became 100% owner" in original signatory to contract with the defendant, along with a document reflecting an assignment, was enough to demonstrate plaintiff had standing to sue defendant as the successor-in-interest to the signatory).

The Court finds Siemens's second argument—that Red Hawk lacks standing because it breached the Distributor Agreement by acquiring DPS, Inc. without first obtaining Siemens's

written consent—inappropriate for resolution at this stage in the litigation. In alleging its own breach of contract claim against Red Hawk, Siemens creates a new factual dispute outside of the pleadings, and the Court cannot, at this juncture, consider it. See Marjac, LLC v. Trenk, No. 06-1440, 2006 WL 3751395, at *12 (D.N.J. 2006) ("In considering a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), the Court is limited to a consideration of the contents of the Complaint."); Docherty v. Cape May County, No. 15-8785, 2017 WL 2819963, at *8-9 (D.N.J. June 29, 2017) (declining to decide "issues of fact" supporting a defense raised in the defendants' motion to dismiss that were "not pled in the Second Amended Complaint"). Siemens may raise this potential counterclaim in an answer to the Amended Complaint.

### B.  Failure to State a Claim

In addition to challenging Red Hawk's standing, Siemens makes several arguments under Rule 12(b)(6) concerning the Amended Complaint's claims.

#### 1.  Breach of Contract

Siemens first argues that the Amended Complaint fails to state a breach of contract claim. Siemens relies on two letters it attached as exhibits to its motion to dismiss as support. For the reasons below, the Court declines to consider one of those letters and disagrees with Siemens that dismissal of Count One under Rule 12(b)(6) is warranted.

On a motion to dismiss, the Court generally may not consider matters extraneous to the pleadings without converting the motion to one for summary judgment unless they are "integral to or explicitly relied upon in the complaint." See In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1426. Siemens relies on two letters—one dated February 7, 2018, Johnson Decl., Ex. 11 (the "February Letter"), and one dated March 9, 2018, id. Ex. 12 (the "March Letter")— claiming that they show it did not breach the Distributor Agreements. See Def. Br. at 16-17. The Court

considers the February Letter as the Amended Complaint specifically refers to the letter, see Am. Compl. ¶ 9, but will not consider the March Letter because the pleading neither relies on nor refers to it.[2] As indicated earlier, the Court relies on the Distributor Agreements as they are integral to and explicitly relied on in the Amended Complaint.

Having reviewed the February Letter, the Court rejects Siemens's assertion that the Amended Complaint fails to state a breach of contract claim. The February Letter shows nothing more than Siemens's providing DPSI a thirty-day period to cure its alleged deficiencies under the Distributor Agreements. See Johnson Decl., Ex. 11. The Amended Complaint does not allege that Siemens breached the Agreement by issuing the thirty-day cure letter threatening termination. Instead, the Amended Complaint, argues that Siemens breached the Distributor Agreements "by refusing to provide products to DPSI in a plan to prevent DPSI from fulfilling existing customer sales and potential sales" and "by wrongfully stating to DPSI customers and potential customers that Siemens had terminated DPSI's rights under the Distribut[or] Agreement[s], and that DPSI would, therefore, be unable to perform work or provide any material or equipment on any contract or bid." Am. Compl. ¶¶ 24-25.

The first claim—refusing to provide products—certainly arises under the Distributor Agreements; the essence of those agreements was that Siemens would sell and provide products to DPSI for distribution. See, e.g., ECF No. 31.8 §§ 1.A, 3.A. This claim thus provides a proper basis for Red Hawk's breach of contract claim. In addition, as explained in Section III.C.2, at this stage, Plaintiff has sufficiently alleged damages to support this claim. Accordingly, Plaintiff's

---

[2] Although the Amended Complaint alleges Siemens terminated the Distributor Agreements on March 9, it does not state that Siemens sent a letter to that effect or that Plaintiff relies on that letter to demonstrate Siemens's termination.

breach of contract claim, to the extent it alleges Siemens breached the Distributor Agreements for failing to provide DPSI products, may proceed.[3]

However, the Court finds that the second claim—Siemens's alleged false statements to DPSI's customers that DPSI could not perform work or provide materials on any contract or bids— is insufficiently alleged to support Red Hawk's breach of contract claim. The Amended Complaint fails to allege or identify a contractual provision on which this claim is based. Plaintiff's breach of contract claim as it relates to these alleged false statements is thus dismissed. Red Hawk may re-plead this claim to the extent they can allege the contractual provision under which it is brought.

For the foregoing reasons, Siemens's Motion to Dismiss Count One is granted only as to Plaintiff's allegation that Siemens breached the Distributor Agreements by making false statements to DPSI's customers, and denied as to the allegation that Siemens failed to provide products to DPSI as required under the Distributor Agreements.

### 2. Tort Claims[4]

Siemens next asserts that the economic loss doctrine bars Red Hawk's tort claims. In the alternative, Siemens argues that the Amended Complaint fails to state claims for unjust enrichment, fraud or fraudulent misrepresentation, and defamation.

"New Jersey courts have consistently held that contract law is better suited to resolve disputes between parties where a plaintiff alleges direct and consequential losses that were within the contemplation of sophisticated business entities with equal bargaining power and that could

---

[3] Siemens contention that it had the right to withhold products under the Distributor Agreements is predicated on a contractual provision triggered <u>after</u> termination of those agreements. <u>See</u> Def. Reply Br. at 9 (citing ECF No. 31.10 §§ 15.D.(2), 16.A.), ECF No. 45. The Amended Complaint, however, does not allege that Siemens exclusively withheld products from DPSI after the Distributor Agreements were terminated. Drawing all inferences in Red Hawk's favor, the Court finds that at this juncture, those provisions of the Distributor Agreements do not bar Red Hawk's breach of contract claim.

[4] The Distributor Agreements are governed by New Jersey law. Johnson Decl., Exs. 5-7 § 20(F).

have been the subject of their negotiations." Travelers Indem. Co. v. Dammann & Co., Inc., 594 F.3d 238, 248 (3d Cir. 2010). Under New Jersey law, the economic loss doctrine bars plaintiffs from "recovering in tort economic losses to which their entitlement only flows from contract." Chen v. HD Dimension Corp., No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010). Only tort claims asserting the defendant breached a duty owed to the plaintiff independent of the contractual duties may be alleged alongside a breach of contract claim. Atlas Acquisitions, LLC v. Porania, LLC, No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019).

      **i.**      **Count Two: Breach of the Implied Covenant of Good Faith and Fair Dealing**

Siemens argues that the economic loss doctrine bars Count Two because Siemens's alleged "conduct under [Count Two] stems from the purported duties owed by Siemens under the Agreements." Def. Br. at 25. The Court disagrees.

Each party to a contract assumes the implicit duty of good faith and fair dealing in their performance thereunder. Pickett v. Lloyd's & Peerless Ins. Agency, Inc., 148 N.J. 396 (1993). "A party to a contract breaches the covenant if it acts in bad faith or engages in some other form of inequitable conduct in the performance of a contractual obligation." Black Horse Lane Assoc., L.P. v. Dow Chem. Corp., 2288 F.3d 275, 288 (3d Cir. 2000) (citation omitted). By its very nature, the implied covenant of good faith and fair dealing sounds in contract, and a claim alleging breach of the covenant "is not actionable in tort." Skypala v. Mortgage Electronic Registration Sys., Inc, 655 F. Supp. 2d 451, 460 (D.N.J. 2009); see also Dando v. Bimbo Food Bakeries Distribution, LLC, No. 14-2956, 2017 WL 1362022, at *3 (D.N.J. Apr. 10, 2017). It follows that, as a matter of law, the economic loss doctrine does not apply to claims asserting breach of the implied covenant of good faith and fair dealing. Dando, 2017 WL 1362022, at *3.

In addition, the Court finds unpersuasive Siemens's contention that the Amended Complaint fails to state conduct by Siemens beyond that imposed by the Distributor Agreements such that the claim may proceed in conjunction with Count One. <u>See</u> Def. Reply Br. at 10-11. To sufficiently plead a breach of the duty of good faith and fair dealing under New Jersey law, a plaintiff must allege that "(1) the defendant act[ed] in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." <u>Yapak, LLC v. Mass. Bay Ins. Co.</u>, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009) (collecting cases). Among other things, a defendant may breach the implied covenant of good faith and fair dealing if the plaintiff's "reasonable expectations are destroyed when [the] defendant acts with ill motives and without ay purpose," or the plaintiff "relies to its detriment on [the] defendant's intentional misleading assertions." <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Associates</u>, 182 N.J. 210, 226 (2005). The plaintiff cannot maintain a breach of the implied covenant of good faith and fair dealing claim that is duplicative of its breach of contract claim. <u>Adler Eng'rs, Inc. v. Dranoff Props.</u>, No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014).

Here, while Siemens correctly observes that Count Two alleges conduct that is duplicative of Count One, i.e. that Siemens's "breaches of the Distributor Agreements . . . frustrated DPSI's expectations of benefits" under those agreements, Am. Compl. ¶ 32, that is not the only allegation on which Red Hawk relies to support this claim. Count Two plainly refers back to allegations plead earlier in the Amended Complaint, some of which suggest inequitable conduct by Siemens. <u>See</u> <u>id.</u> ¶¶ 30, 33. Those allegations include that Siemens, among other things, "undermine[d] DPSI's efforts" to cure DPSI's alleged breach and made false statements about DPSI to DPSI's customers about DPSI's ability to perform on various projects. <u>See</u> Am. Compl. ¶¶ 13-14, 18-20.

The Court finds these allegations sufficient to plead a breach of the implied covenant of good faith and fair dealing differentiable to the breach of contract claim, and, at this early stage, Count Two may proceed.

Accordingly, because the economic loss doctrine does not bar Count Two and Red Hawk has sufficiently stated a breach of the implied covenant of good faith and fair dealing claim that is not duplicative of Count One, Siemens's motion to dismiss Count Two is denied.

### ii.      Count Three: Unjust Enrichment

Siemens next asserts that the economic loss doctrine bars Count Three because "a claim for unjust enrichment cannot stand where a valid contract controls the parties' rights and obligations." Def. Br. at 25.  In the alternative, Siemens argues that Count Three is duplicative of Red Hawk's breach of contract claim and fails to state an unjust enrichment claim because it does not "establish that Siemens accepted a benefit beyond its contractual right."  Id. at 32-33.  The Court disagrees that the economic loss doctrine bars Count Three but nonetheless finds it must be dismissed.

Under a liberal reading of the Amended Complaint, it appears that Red Hawk's unjust enrichment claim is at least in part predicated on its breach of contract claim.  See Am. Compl. ¶ 36 ("Siemens deceptively and fraudulently obtained contracts that were rightfully due to DPSI, due to an improper termination of the Distribution Agreement, as well as defaming DPSI.") (emphasis added).  The Court therefore finds that Count Three is limited to an alternative theory of liability to Count One, and the economic loss doctrine does not bar that claim.  See MK Strategies, LLC v. Ann Taylor Stores Corp., 567 F. Supp. 2d 729, 736 (D.N.J. 2008) ("This Court has regularly permitted claims for both unjust enrichment and breach of contract to proceed at the motion to dismiss stage, finding that dismissal of one of these claims would be premature.").

Yet, although Count Three could proceed as an alternative theory to Count One if properly pled, it fails to sufficiently state an unjust enrichment claim and must be dismissed. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself at the expense of another." Goldsmith v. Camden County Surrogate's Office, 408 N.J. Super. 376, 382 (N.J. Super. 2009) (internal quotation marks and citation omitted). To state a claim for unjust enrichment in New Jersey, Red Hawk must allege that it conferred a benefit on Siemens and Siemens's retention of that benefit without payment would be inequitable. See Hassler v. Sovereign Bank, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), aff'd 374 F. App'x 341 (3d Cir. 2010). Red Hawk must also show that "it expected remuneration" from Siemens "at the time it performed or conferred a benefit . . . and that the failure of remuneration enriched [Siemens] beyond its contractual rights." See VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994).

Here, even under a liberal reading, the Amended Complaint does not allege facts demonstrating that DPSI conferred a benefit on Siemens with the expectation of remuneration. Instead, it alleges that Siemens received a benefit in the form of a subcontractor bid on "the Escondido Union School District, Mission Middle School modernization project" which "rightfully belong[ed] to DPSI." Am. Compl. ¶¶ 14-15, 17, 37. On their face, these allegations indicate that Siemens received something from a third party—not from Red Hawk or its predecessors. In addition, even if the Court were to accept the alleged benefit as one conferred by Red Hawk or one of its predecessors, the Amended Complaint fails to allege that those entities expected remuneration from Siemens and that Siemens's retention of that benefit without payment to Red Hawk would be inequitable. These deficiencies warrant dismissal of Count Three.

### iii. Counts Four and Five: Tortious Interference with Contract and Prospective Economic Advantage

Siemens asserts that the economic loss doctrine bars Counts Three and Four because those claims are "based upon the wrongful termination of the Agreements by Siemens," and thus "are intrinsic to the alleged [b]reach of [c]ontract [c]ount." Def. Br. at 26. The Court disagrees.

Counts Four and Five claim that Siemens intentionally interfered with contracts DPSI had with "customers to provide labor and or materials related to [Plaintiff's] rights" under the Distributor Agreements "by contacting the parties contracting and stating that [Plaintiff] would not be able to provide materials required to perform and that Siemens had terminated the Distribut[or] Agreements." See Am. Compl. ¶¶ 42-44, 50-52. The Amended Complaint also alleges that Siemens contacted those customers after it had terminated the Distributor Agreements and identifies the existing and potential projects with which Siemens allegedly interfered. Id. ¶¶ 12-20.

Viewing these allegations in Red Hawk's favor, at this juncture, the Court finds that the economic loss doctrine does not bar Counts Four and Five. Contrary to Siemens's contention, it does not appear from the face of the Amended Complaint that Red Hawk's tortious interference claims are "wholly predicated on" Siemens's alleged "improper termination" of the Distributor Agreements. See Def. Br. at 26. While Red Hawk's claims, in part, involve customers who had pre-existing contractual relationships with DPSI in furtherance the Distributor Agreements, those relationships do not bar Red Hawk's tortious interference claims because: (1) the Amended Complaint does not allege—nor is that apparent from the Distributor Agreements—that those pre-existing contractual relationships were dependent on the Distributor Agreements such that any claims arising from them would be intrinsic to the Agreements; and (2) the Amended Complaint alleges tortious interference by Siemens after the Distributor Agreements were terminated with

prospective customers of DPSI.  For these reasons, the Court cannot conclude at this stage that Counts Four and Five are intrinsic to the Distributor Agreements.  Accordingly, Siemens's Motion to Dismiss Counts Four and Five is denied.

### iv.   Counts Six and Seven: Fraud and Fraudulent Misrepresentation

Siemens next argues that the economic loss doctrine bars Counts Six and Seven because they "relate to the performance of the Agreement between Siemens and DPS INC" and are "directly predicated upon alleged actions and/or omissions by Siemens in the termination of the Agreements." Def. Br. at 29.  Siemens also contends that Counts Six and Seven fail to state fraud and fraudulent misrepresentation claims because Siemens's conduct fell within that expressly permitted by the Distributor Agreement.  Id. at 34.  The Court agrees that the economic loss doctrine bars Counts Six and Seven.

"The threshold question regarding the economic loss doctrine's applicability to fraud and contract claims plead together 'is whether the allegedly tortious conduct is extraneous to the contract.'" Fischell v. Cordis Corp., No., 2016 WL 5402207, at *8 (D.N.J. Sept. 26, 2016) (citation omitted).  For example, a claim of fraud in the inducement of a contract may proceed alongside a breach of contract claim because the former is based on pre-contractual misrepresentations that are extrinsic to the parties' agreement.  Grasso Foods, Inc. v. Wynn Envir'tl Sales Co., No. 17-6430, 2018 WL 3455479, at *3 (D.N.J. July 18, 2018).  Thus, to survive, the plaintiff must allege misrepresentations that "precede the actual commencement of the agreement," see Chen v. HD Dimension, Corp., No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010), or having no relation to the agreement.

Here, the economic loss doctrine bars Counts Six and Seven because those claims are based on alleged tortious conduct during Siemens's performance of the Distributor Agreements.

Specifically, Counts Six and Seven allege that that Siemens committed fraud in its representations to DPSI about the thirty-day period during which DPSI could cure its alleged performance deficiencies before Siemens terminated the Distributor Agreements. See Compl. ¶¶ 57-67, 69-80. They contend that Siemens offered that cure period with the intention to not follow through with it, and DPSI relied on the cure period to its detriment. Id. These allegations are undoubtedly related to Siemens's performance under the contract, namely, whether it properly followed its obligations to under the Distributor Agreements related to termination of contract.[5] Consequently, Counts Six and Seven amount to claims for fraud in the performance of the Distributor Agreements and are barred by the economic loss doctrine.[6]

## v.    Count Eight: Defamation

Finally, Siemens argues that the economic loss doctrine bars Count Eight because the claim is based solely on the parties' "contractual relationship" under the Distributor Agreements. Def. Br. at 30. In addition, Siemens asserts that Count Eight fails to state a claim for defamation, in part, because it contains "no facts suggesting that whatever statements were made harmed the business reputation of DPS INC in the community." Def. Br. at 35. The Court disagrees.

Siemens points to no authority supporting its assertion that the economic loss doctrine bars Red Hawk's defamation claim. It appears that there is no authority on the issue in this Circuit or in New Jersey. The Court is aware of only one out-of-jurisdiction federal case directly addressing

---

[5] In its opposition brief, Red Hawk asserts that its fraud claims are based on alleged misrepresentations made in the February Letter and not on any "non-performance." Pl. Br. at 25. But the February Letter, which is labeled as "Termination of Distributorship," explicitly refers to Section 15(e) of the Distributor Agreements as the source of Siemens's ability to terminate the parties' contract. That Section gives Siemens the right to terminate the Distributor Agreements at any time upon notice, effective sixty days from the date of such notice. See Johnson Decl., Ex. 5, ECF No. 31.8. Siemens offered DPS, Inc. a thirty-day cure period in furtherance of the parties' contractual relationship; it was not a standalone promise disconnected from the parties' obligations under the Distributor Agreements.

[6] Because the Court dismisses Counts Six and Seven under the economic loss doctrine, it need not consider whether they sufficiently state claims for fraud and fraudulent misrepresentation.

this issue.  See Food Marketers, LLC v. Ole Mexican Foods, Inc., No. 03-190, 2004 WL 632869, at *17 (W.D. Wisc. Mar. 29, 2004) (finding that the economic loss doctrine did not bar the plaintiff's defamation claim under Wisconsin law, in part, because "[d]amages caused by defamatory remarks are not the sort of loss that parties to a contract contemplate when they sit down at the bargaining table" and "defamation is almost always extrinsic to a contract"); see also Interstate Sec. Corp. v. Hayes Corp., 920 F.2d 769, 776 n.11 (11th Cir.) (speculating that "tort damages might be available for defamation . . . in addition to the remedies for an accompanying breach of contract" under Florida law).  Other state court decisions have reached similar conclusions.  See, e.g., Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc., 463 S.E.2d 85, 88 (S.C. 1995) (observing that "[p]urely 'economic loss' may be recoverable under a variety of tort theories," including defamation, and turns on "the source of the duty plaintiff claims the defendant owed"); Dittman v. UPMC, 196 A.3d 1036, 1054-55 (Pa. 2018) (adopting the Tommy L. Griffin Plumbing approach).

When the New Jersey Supreme Court has not issued a decision directly on point, the Court is charged with predicting how it would resolve the question in issue.  Yohannon v. Keene Corp., 924 F.2d 1255, 1264 (3d Cir. 1991).  The reasoning underlying each of the above-mentioned cases is consistent with the governing principle for analyzing whether the economic loss doctrine applies: courts must determine whether the alleged defamation claim arises under or is independent of the parties' contract.  The Court has no reason to believe the New Jersey Supreme Court would rule otherwise.

Reading the Amended Complaint liberally, here, the Court finds that the economic loss doctrine does not bar Red Hawk's defamation claim.  The Amended Complaint alleges Siemens falsely advised general contractors to a project that "DPSI would not be able to provide the

materials required to perform the . . . [p]roject as a potential subcontractor because Siemens was cancelling DPSI's distributorship." Am. Compl. ¶ 14. This allegation, while referencing the distributorship relationship between the parties, asserts tortious conduct that does not arise from the Distributor Agreements, namely that Siemens made false statements to general contractors with which DPSI had a pre-existing or potential contractual relationship. In fact, like Red Hawk's tortious interference claims, the Amended Complaint states that Siemens made the defamatory statement after it allegedly terminated the Distributor Agreements, suggesting tortious conduct independent from the parties' contracts. See id. ¶¶ 13-14. Because the Amended Complaint adequately pleads facts demonstrating alleged tortious conduct extrinsic to the parties' contract, the economic loss doctrine does not bar Count Eight.

Having found the economic loss doctrine does not bar Count Eight, the Court now turns to Siemens's alternative argument: whether Count Eight is pled with sufficient particularity to survive a motion to dismiss. To state a claim for defamation under New Jersey law, the plaintiff must allege: (1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher. Ross v. Bd. of Educ. Greater Egg Harbor Regional High School Dist., 658 F. App'x 97, 100 (3d Cir. 2016) (quoting DeAngelis v. Hill, 180 N.J. 1, 13 (2004)). A defamatory statement is one that is false and injurious to a party's reputation. Taj Mahal Travel, Inc. v. Delta Airlines Inc., 164 F.3d 186, 189 (3d Cir. 1998). At the motion to dismiss stage, the plaintiff need not identify the precise defamatory statements made by the defendant. See Mangan v. Corporate Synergies Grp., Inc., 834 F. Supp. 2d 199, 204 (D.N.J. 2011).

The Court finds that Count Eight sufficiently states a claim for defamation. Count Eight alleges that Siemens published false statements about DPSI to its potential customers (e.g. "that

DPSI would not be able to provide the materials required to perform" a subcontractor project) and was aware of the falsity of those statements when it made them. Am. Compl. ¶¶ 14, 83-84. Although it is not required at this juncture, the Amended Complaint identifies at least one of those alleged defamatory statements. Id. ¶ 14. Count Eight also alleges that such false statements caused reputational harm to Red Hawk. Id. ¶ 88. These allegations are enough to plausibly plead a defamation claim.

Siemens's argument that qualified privilege protects its alleged defamatory statements is unpersuasive and premature at this stage. Under New Jersey law, qualified privilege protects defamatory statements "if the person communicating the alleged defamation and the audience have a 'commensurate interest or duty in the communication.'" Mangan, 834 F. Supp. 2d at 207 (citation omitted). The privilege recognizes that "in particular situations . . . private people [should] be able freely to express private concerns to a limited and correlatively concerned audience." Bainhauer v. Manoukian, 215 N.J. Super. 9, 36 (App. Div. 1987). Courts determining whether qualified privilege applies to bar a defamation claim must assess: (1) "the appropriateness of the occasion on which the defamatory information is published"; (2) "the legitimacy of the interest thereby sought to be protected or promoted"; and (3) "the pertinence of the receipt of that information by the recipient." Id. at 40. However, to determine whether qualified privilege applies under the circumstances here, the Court "would need to take notice of specific facts outside of the [Amended] Complaint" and such "[c]onsideration of matters outside the pleadings . . . is generally not permitted in a Rule 12(b)(6) motion to dismiss." Mangan, 834 F. Supp. 2d at 208.

Based on the foregoing, Plaintiff has pleaded sufficient facts to plausibly state a defamation claim, and that claim may proceed. Siemens may later raise the qualified privilege issue in any

answer to Red Hawk's Amended Complaint or on a motion for summary judgment filed after discovery.

### C. Rule 12(f) Motion to Strike

In its motion to dismiss, Siemens argues that Red Hawk's requests for punitive damages and a jury trial must be stricken from the Amended Complaint. The Court grants Siemens's motion to strike Red Hawk's jury demand but denies its motion with respect to punitive damages.

#### 1. Jury Demand

Siemens argues that Plaintiff waived its right to a jury trial in executing the Distributor Agreements. Under Rule 12(f), a court may strike an improper jury demand. See Narducci v. Aegon USA, Inc., No. 10-955, 2010 WL 5325643, at *4 (D.N.J. Dec. 15, 2010). However, the Court need not determine the merits of Siemens's motion to strike Red Hawk's jury demand because Red Hawk has agreed to retract it. Pl. Br. at 34. Siemens's motion to strike Red Hawk's jury demand is therefore granted, and it is so stricken.

#### 2. Damages

Siemens next argues that the Court should strike Red Hawk's request for punitive damages based on the Distributor Agreements' limitation on liability provisions and because "punitive damages are not recoverable in contract." Def. Br. at 38. The Court disagrees.

While Siemens is correct that punitive damages may not be awarded for contractual claims, see Thomas v. Nova Southeastern Univ., 468 F. App'x 98, 100 (3d Cir. 2012) (citing Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1194 (3d Cir. 1993)), the Amended Complaint does not merely assert contractual claims—punitive damages may certainly be available for Red Hawk's defamation claim. See W.J.A. v. D.A., 210 N.J. 229, 241 (explaining that, under New Jersey law, "punitive damages . . . may be awarded in a defamation case").

In addition, whether the limitation of liability provisions in the Distributor Agreements restrict or limit Red Hawk's damages involves factual issues that are inappropriate for resolution on a motion to dismiss. For example, Siemens relies on a limitation of liability provision that appears to cap Red Hawk's potential damages at $100,000 rather than foreclosing Red Hawk from pursuing any damages, see Def. Br. at 14 (quoting Johnson Decl., Exs. 5-7 § 19), and Red Hawk claims that the limitation of liability provisions are unconscionable, Pl. Br. at 19. Accordingly, at this stage, the Court finds that the Amended Complaint sufficiently states a claim for damages, and Siemens's motion to strike Red Hawk's demand for punitive damages is denied. See Berman v. ADT LLC, No. , 2013 WL 6916891, at *8 (D.N.J. Dec. 13, 2013) ("It is inappropriate for the Court to wade into factual issues, such as the measure of Plaintiffs' damages, on a motion to dismiss."). Siemens may raise any issues concerning damages on a motion for summary judgment after discovery.

## IV. CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss the Amended Complaint and Strike Claims, ECF No. Plaintiff's Amended Complaint, ECF No. 29.1, is **GRANTED in part and DENIED in part**. Red Hawk's Motion to Strike, ECF No. 38, is **GRANTED**.[7] An appropriate Order follows.

Dated: March 30, 2020

*/s Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**

---

[7] Red Hawk's motion to strike is procedural and concerns its filing of an incorrect version of its opposition to Siemens's motion to dismiss, located at Docket Number 36. See ECF No. 38. Red Hawk filed a revised version pursuant to instructions by the Clerk of the Court, and the Court relied on that version, ECF No. 37, in reaching its conclusions in this Opinion. Siemens did not file an objection or response to Red Hawk's motion. Accordingly, the Court grants Red Hawk's request to strike from the docket ECF No. 36.