**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

RED HAWK FIRE & SECURITY, LLC,
As successor-in-interest to DIVERSIFIED
PROTECTION SYSTEMS, LLC, a
California limited liability company,

Plaintiff,

vs.

SIEMENS INDUSTRY, INC., a Delaware
corporation, and DOES 1 through 200,
inclusive,

Defendants.

Civil Action No. 2:19-cv-13310-MCA-MAH

**Hon. Madeline Cox Arleo, U.S.D.J.
Hon. Michael A. Hammer, U.S.M.J.**

**SECOND AMENDED COMPLAINT**

*Document Filed Electronically*

The Plaintiff, Red Hawk Fire & Security, LLC, as successor-in-interest to Diversified Protection Systems, LLC ("DPSI"), by way of its Second Amended Complaint against Defendant Siemens Industry, Inc. ("Siemens"), alleges and says:

**JURISDICTION**

1. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because DPSI was and is a limited liability company existing under the laws of the State of California, Siemens is and was a for-profit corporation organized and existing under the laws of the State of Delaware, and more than $75,000.00 is in controversy.

**VENUE**

2. Venue is appropriate in the District Court of New Jersey pursuant to Court Order from the Southern District of California.

**GENERAL**

3. At all times referenced herein, DPSI was a limited liability company of the State of California and was a properly licensed contractor of the State of California.

4.    At all times referenced herein, Siemens was a for-profit corporation of the State of Delaware doing business in San Diego County, California.

5.    DPSI and Siemens entered into a series of written agreements whereby DPSI agreed to act as a distributor of Siemens' products through certain areas of the State of California.

6.    The last agreement executed between DPSI and Siemens was dated October 1, 2017 (the "Distributorship Agreement").

7.    The Distributorship Agreement provided, in relevant part, that DPSI was required to meet certain purchasing requirements of Siemens' products. Specifically, DPSI's aggregate sales of Siemens' products were to exceed $100,000.00.

8.    The Distributorship Agreement further provides, at Section 3(K), that Siemens was not to "undertake negative marketing toward" DPSI and/or its employees.

9.    On February 7, 2018, Siemens issued a letter to DPSI indicating that DPSI's distributorship arrangement with Siemens would be terminated within sixty (60) days if DPSI did not cure alleged breaches of the Distributorship Agreement.

10.    Specifically, DPSI was alleged to have not met required purchase quotas from Siemens.

11.    Thereafter, DPSI undertook significant efforts to comply with Siemens' requests, and was, in fact, close in meeting Siemen's expectations.

12.    On March 9, 2018, within the time period provided by Siemens to cure the alleged defects, Siemens terminated the Distributorship Agreement by and between the parties.

13.    Soon thereafter, it became clear that Siemens intended to undermine DPSI's efforts.

2

14. By way of example, and by no means of limitation, Siemens sent a letter to all the general contractors bidding on the Escondido Union School District, Mission Middle School modernization project (the "Mission Project"), falsely alleging that DPSI would not be able to provide the materials required to perform the Mission Project as a potential subcontractor because Siemens was canceling DPSI's distributorship.

15. Importantly, Siemens was the only other bidding entity as a subcontractor on the Mission Project.

16. Not coincidently, Siemen's bid was significantly higher than the DPSI bid.

17. Upon information and belief, the general contractor that prevailed upon the Mission Project bid, Barnhart-Reese Construction, would have selected DPSI as its subcontractor, rather than Siemens, had Siemens not sent the defamatory letter.

18. Since that time, DPSI has learned that Siemens has contacted a large number of general contractors and DPSI's former and potential customers, apparently stating that DPSI has been terminated as a dealer of Siemens.

19. Upon information and belief, Siemens tortiously interfered with, at least, the following existing contracts of DPSI: Escondido Unified School District annual maintenance contract, SeaWorld San Diego maintenance contract, and Petco Park detector and devices upgrade.

20. Moreover, upon information and belief, Siemens tortiously interfered with DPSI's reasonable expectation of obtaining additional work from DPSI's existing customers, including, but not limited to, additional projects from the Escondido Unified School District, SeaWorld San Diego, Rio Vista Tower, and City Front Terrace.

21. Due to the foregoing conduct of the Siemens, DPSI has been, and will continue to be, harmed.

## FIRST COUNT
### (Breach of Contract)

22. Plaintiff repeats and realleges each and every allegation as if set forth at length herein.

23. Plaintiff has, at all times, performed all stipulations, conditions, and obligations stated in the Distributorship Agreement and has done so in the manner specified therein, while Siemens has failed and refused to satisfy its obligations under the Distributorship Agreement.

24. Siemens breached the Distributorship Agreement by refusing to provide products to DPSI in a plan to prevent DPSI from fulfilling existing customer sales and potential sales.

25. Siemens also breached the Distributorship Agreements (specifically, the requirement that it not "undertake negative marketing toward" DPSI and/or its employees, as set forth in Section 3(K)) by wrongfully stating to DPSI customers and potential customers that Siemens had terminated DPSI's rights under the Distribution Agreement, and that DPSI would, therefore, be unable to perform work or provide any material or equipment on any contract or bid award.

26. Therefore, Siemens has breached its obligations under the Distributorship Agreement.

27. Siemens' breach is material and goes to the essence of the Distributorship Agreement.

28. DPSI is also entitled to the recovery of its attorneys' fees and costs pursuant to the terms of the Distributorship Agreement.

29.     As a direct and proximate result of Siemens' breaches, DPSI has been, and will continue to be, harmed.

**WHEREFORE**, DPSI demands judgment against Siemens as follows:

(a) For consequential and incidental damages;

(b) For attorneys' fees and costs of suit;

(c) For pre-judgment interest; and

(d) For such other relief as the Court deems proper.

## SECOND COUNT
### (Breach of Covenant of Good Faith and Fair Dealing)

30.     Plaintiff repeats and realleges each and every allegation set forth above as if set forth at length herein.

31.     In every contract between parties, there is an implied covenant imposed upon both parties to deal in good faith and fairly as to not frustrate the other party's expectation of benefits under the contract.

32.     By its breaches of the Distributorship Agreement, Siemens has frustrated DPSI's expectation of benefits under the Distributorship Agreement.

33.     By such conduct as set forth above, Siemens has breached the implied covenant of good faith and fair dealing of the Distributorship Agreement.

34.     As a direct and proximate result of Siemens' breaches, DPSI has been, and will continue to be, harmed.

**WHEREFORE**, DPSI demands judgment against Siemens as follows:

(a) For consequential and incidental damages;

(b) For punitive damages;

(c) For attorneys' fees and costs of suit;

(d) For pre-judgment interest; and

(e) For such other relief as the Court deems proper.

## THIRD COUNT
### (Tortious Interference with Contract)

35.    DPSI repeats and realleges each and every allegation set forth above as if set forth at length herein.

36.    Siemens was aware of existing contracts that DPSI had with customers to provide labor and or materials related to DPSI's rights under the Distribution Agreements.

37.    DPSI possessed a protectable interest in its contracts with its customers.

38.    Siemens intentionally interfered with those contracts by contacting the parties contracting and stating that DPSI would not be able to provide the materials required to perform and that Siemens had terminated the Distribution Agreements.

39.    Siemens' actions were illegal and actionable, in that Siemens had no right under contract or at law to interfere with DPSI's existing contractual relations with customers or to terminate the Distribution Agreement in the manner it did.

40.    Siemens intentionally and maliciously induced DPSI's customers to breach their existing contracts with DPSI.

41.    Siemens took these actions expressly for the purpose of interfering with the ongoing contractual relations between DPSI and its customers.

42.    As a direct and proximate result of Siemens' intentional and malicious interference with DPSI's existing contracts, DPSI has suffered and will continue to suffer damages in in the form of lost business, lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

**WHEREFORE**, DPSI demands judgment against Siemens as follows:

(a) For consequential and incidental damages;

(b) For punitive damages;

(c) For attorneys' fees and costs of suit;

(d) For pre-judgment interest; and

(e) For such other relief as the Court deems proper.

## FOURTH COUNT
### (Tortious Interference with Prospective Economic Advantage)

43.    DPSI repeats and realleges each and every allegation set forth above as if set forth at length herein.

44.    Siemens was aware of existing contracts that DPSI had with customers to provide labor and or materials related to DPSI's rights under the Distribution Agreements.

45.    In addition, Siemens was aware of specific contracts that DPSI was in line to obtain based on ongoing bidding, renewals of existing agreements, and completion of previously commenced work.

46.    Siemens intentionally interfered with those economic relations by contacting the parties and wrongfully stating that DPSI would not be able to provide the materials required to perform and that Siemens had terminated DPSI's rights under the Distribution Agreements.

47.    Siemens took these actions expressly for the purpose of interfering with the ongoing and prospective economic relations between DPSI and its customers.

48.    As a result of Siemens' intentional and malicious interference, DPSI lost contracts with prospective customers that would have, or did, otherwise enter into contractual relationships with DPSI.

49.    As a direct and proximate result of Siemens' intentional and malicious interference, DPSI has suffered and will continue to suffer damages in the form of lost business,

lost revenue, lost goodwill, compensatory damages and other immeasurable and irreparable injuries.

**WHEREFORE**, DPSI demands judgment against Siemens as follows:

(a) For consequential and incidental damages;

(b) For punitive damages;

(c) For attorneys' fees and costs of suit;

(d) For pre-judgment interest; and

(e) For such other relief as the Court deems proper.

<u>**FIFTH COUNT**</u>
**(Defamation)**

50.    DPSI repeats and realleges each and every allegation set forth above as if set forth at length herein.

51.    As alleged herein, Siemens published false statements about DPSI to DPSI's customers and potential customers for the sole purpose of interfering with DPSI's business opportunities and to usurp those opportunities.

52.    Siemens was aware of the falsity of these statements when the statements were made.

53.    The defamatory and disparaging statements about DPSI are outrageous and false.

54.    DPSI has enjoyed a good name and reputation in the industry.

55.    The defamatory and disparaging statements by Siemens have been spoken, written, or otherwise published to third persons maliciously, recklessly, and/or in bad faith.

56.    DPSI's reputation has been substantially harmed and is at risk of further substantial harm by the past, continuing, and ongoing defamation by Siemens.

57.     As a direct and proximate result of Siemens' conduct, DPSI has been, and will continue to be, harmed.

**WHEREFORE**, DPSI demands judgment against Siemens as follows:

(a) For consequential and incidental damages;

(b) For punitive damages;

(c) For attorneys' fees and costs of suit;

(d) For pre-judgment interest; and

(e) For such other relief as the Court deems proper.

Dated:  April 16, 2020

*/s/ Timothy I. Duffy*
Timothy I. Duffy, Esq.
**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Telephone: (973) 631-6002
Fax: (973) 267-6442
tduffy@coughlinduffy.com

*/s/ Joseph P. Fiteni*
Joseph P. Fiteni, Esq.
**COUGHLIN DUFFY LLP**
350 Mount Kemble Avenue
Morristown, New Jersey 07962
Telephone: (973) 631-6093
Fax: (973) 267-6442
jfiteni@coughlinduffy.com